UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KWESI BONAPART,

                                            Plaintiff,


v.                                                                      1:25-cv-0717
                                                                         (MAD/TWD)


CITY OF TROY NEW YORK POLICE DEPARTMENT, et al.,
                                            Defendants.

_____

APPEARANCES:

KWESI BONAPART
*Plaintiff, pro se*
24-B-4386
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

**I.      INTRODUCTION**

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Kwesi Bonapart ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983.  *See* Dkt. No. 1.

Plaintiff, who is currently confined at Mohawk Correctional Facility, has not paid the filing fee

for this action and seeks leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. Nos. 11, 13.

**II.      IFP APPLICATION**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. *See* Dkt. No. 11. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District he is granted permission to proceed IFP.[1]

## III.    COMPLAINT

Plaintiff commenced this action by filing a complaint with the United States District Court for the Western District of New York on May 2, 2025. *See generally*, Dkt. No. 1. The complaint appears to have been drafted using that Court's form complaint for violations of civil rights. *See id*. On June 6, 2025, the Hon. Elizabeth A. Wolford, United States District Judge, transferred the action to this District. *See* Dkt. Nos. 5-7. By Order dated June 10, 2025, the Hon. Mae A. D'Agostino, United States District Judge, denied the Plaintiffs' IFP application as incomplete and ordered the Plaintiffs to either: (1) pay the Court's filing fee in full; or (2) submit a completed, signed, and certified IFP application. Dkt. No. 8. Plaintiff subsequently filed a completed, signed, and certified IFP application. *See* Dkt. No. 11.

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

The complaint lists eight defendants: (1) City of Troy New York Police Department; (2) Nathaniel Casey, Troy PD evidence technician; (3) Mark Adamo, Troy PD video clerk; (4) Brandon Cipperly, Troy PD detective sergeant; (5) Michael Paterno, Troy PD evidence technician; (6) Karrie Hoover, Troy PD detective; (7) Ryan Kennedy, investigator; and (8) Mr. Lane, ADA prosecutor. Dkt. No. 1 at 2-4.[2] His "statement of claim" reads, in full:

> On or about December 15, 2023, a Rensselaer County grand jury charged me Defendant via Sealed Indictment # 70723-23 with Criminal Possession of a Weapon in the Second Degree and Assault in the Second Degree relative to the aforementioned October 17 incident (hereinafter "Shooting Indictment; a copy of said indictment is Attached hereto). Once handed up to the Court, an arrest warrant was issued for same. Malicious Prosecution took place also wrongful imprisonment, false arrest and improper investigation do to the facts at hand. The prosecution failed to properly instruct the Grand Jury concerning the law to the matter at hand and misleading them by showing parts of the video benefiting the prosecution. Theres no testimony as to the actual shooting, and there does not appear from the transcripts that any proof, video or testimonial, was Presented to establish that me the defendant possessed a gun, shot a gun, and/or caused the injuries at issue in the instant indictment. Also there was no 911 call or a investigation being that there was me and five other people at the crime scene no body was questioned but me which is 100% discrimination. I stayed at Rensselaer County Jail for 8 months from February 8, 2024 into September 9th 2024 was my trial date on September 13th 2024 the jury found me not guilty on all counts.

*Id*. at 6 (some capitalization changed). Plaintiff identified "Actual Malice - US Const. Amend 4" as the rights violated by the officials. *Id*. at 3. He requests "5 Mil" in relief. *Id*. at 7.

## IV.    LEGAL STANDARD

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original).  A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure.  To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. ANALYSIS

Upon review, even afforded a liberal construction, Plaintiff's complaint fails to comply with the pleading requirements set forth in the federal rules of civil procedure and fails to state a claim. Accordingly, the undersigned recommends dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

"The [Second Circuit]'s 'special solicitude' for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure." *Lewis v. New York State Bd. of Elections*, No. 8:24-CV-00849 (GTS/CFH), 2024 WL 4910561, at *4

(N.D.N.Y. Sept. 30, 2024) (additional quotations and citations omitted), *report and recommendation adopted*, 2024 WL 4689022 (N.D.N.Y. Nov. 6, 2024).  A complaint that fails to comply with the Federal Rules' pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD), 2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024 WL 1307035 (N.D.N.Y. Mar. 27, 2024).

Under Rule 8, a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "The purpose of this Rule is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted); *see also*, *e.g.*, *Boyd v. United States Gov't*, No. 1:25-CV-0225 (DNH/MJK), 2025 WL 1249698, at *3 (N.D.N.Y. Apr. 30, 2025) (explaining, "allegations 'so vague as to fail to give the defendants adequate notice of the claims against them' are subject to dismissal.") (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order)), *report and recommendation adopted*, 2025 WL 1890326 (N.D.N.Y. July 9, 2025).  "[A]lthough 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'"  *Cole*, 2024 WL 4870495, at *2 (quoting Fed. R. Civ. P. 8(d)).

Next, Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of

circumstances . . . . If doing so would promote clarity, each claim founded on a separate

transaction or occurrence--and each defense other than a denial--must be stated in a separate

count or defense." Fed. R. Civ. P. 10. Rule 10 serves "to provide an easy mode of identification

for referring to a particular paragraph in a prior pleading . . . ." *Flores*, 189 F.R.D. at 55 (internal

quotations and citation omitted).

Here, Plaintiff's complaint lacks a short and plain statement showing Plaintiff is entitled

to relief as well as numbered paragraphs, limited as far as practicable, to a single set of

circumstances. Furthermore, the pleading entirely fails to specify *how* the defendants violated

Plaintiff's constitutional rights. Indeed, *none* of the eight defendants identified in the caption and

list of parties are even mentioned in Plaintiff's statement of claim. *See* Dkt. No. 1 at 6.

In sum, because the pleading entirely fails to provide the defendants with notice of the

claims against them, dismissal is warranted. *See*, *e.g.*, *Bradshaw v. Annucci*, No. 9:23-CV-0602

(MAD/ML), 2023 WL 4744735, at *13 (N.D.N.Y. July 24, 2023) ("Dismissal is appropriate

where a defendant is listed in the caption, but the body of the complaint fails to indicate what the

defendant did to the plaintiff.") (citing *Cipriani v. Buffardi*, No. 9:06-CV-0889 (GTS/DRH),

2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007)) (additional citation omitted); *Chavis v.*

*Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (Although the Court is "obligated to draw the most

favorable inferences that [the Plaintiff]'s complaint supports, we cannot invent factual

allegations that he has not pled."); *Joseph v. Annucci*, No. 7:18-CV-7197, 2020 WL 409744, at

*4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants "named in the caption only"

where "[t]he body of the Complaint [did] not contain any factual allegations naming them, or

indicating that they violated the law or injured the Plaintiff in some manner."); *Jenkins v. Liadka*,

No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *9 (N.D.N.Y. Sept. 13, 2012) ("Because

the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not

a proper defendant in this case.  The real party in interest is the City of Syracuse itself.").

However, in deference to Plaintiff's *pro se* status, the undersigned recommends the action be

dismissed without prejudice to allow Plaintiff the opportunity to cure these defects.

The Court advises Plaintiff that should he be permitted to amend his complaint, any

amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal

Rules of Civil Procedure.  Any such amended complaint should specifically identify the legal

theory or theories that form the basis for his claim.  Plaintiff must provide a short and plain

statement of the relevant facts supporting his claim against any Defendant named in the amended

complaint, including the date and time of the alleged occurrence(s), to his best approximation.

Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his

amended complaint by reference.  Any amended complaint submitted by Plaintiff must set forth

all of the claims he intends to assert against the Defendants and must demonstrate that a case or

controversy exists between the Plaintiff and the Defendants which Plaintiff has a legal right to

pursue and over which this Court has jurisdiction.  If Plaintiff is alleging the Defendants violated

a law, he should specifically refer to such law.  Of course, Plaintiff may also pursue his claims in

state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. Nos. 11, 13) is

**GRANTED**, and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is

further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: October 21, 2025
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**    TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

2010 WL 5185047

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

### III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2**  In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

• In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson [3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

[3]    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

• In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

• In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

• Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury.[5]

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 13 of 125
Cash v. Bernstein, Not Reported in F.Supp.2d (2010)
2010 WL 5185047

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

    Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

**IV.** *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

**V.** *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS ***WILL*** RESULT IN A WAIVER OF OBJECTIONS AND ***WILL*** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 14 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

2024 WL 4910561
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.
Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

No. 8:24-CV-00849 (GTS/CFH), No. 8:24-CV-01036 (GTS/CFH)
|
Signed September 30, 2024

**Attorneys and Law Firms**

Scott Phillip Lewis, 1936 Saranac Avenue, #3, PMB 411, Lake Placid, New York 12946, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

### I. In Forma Pauperis

**\*1** Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on July 4, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

1    The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others. See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 9 (dismissing complaint with leave to amend); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Essex Cnty., 8:24-CV-00100 (MAD/CFH) (N.D.N.Y. filed Jan. 19, 2024), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No. 12 (dismissing complaint without leave to amend); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Redline Hockey, LLC, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Citizens United, Inc., 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 25 (dismissing amended complaint); Lewis v. Adirondack Med. Ctr., 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 15 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

Onondaga Cnty., 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with leave to amend); Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 15 (partially dismissing complaint, permitting one claim to proceed); Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); Lewis v. State of Texas, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:24-CV-03092 (LTS) (S.D.N.Y. filed Apr. 20, 2024); Lewis v. Williamson Cnty., 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing all claims with prejudice as malicious); Lewis v. Williamson Cnty., 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).

2    Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

## II. Consolidation

**\*2**   "Rule 42(a) of the Federal Rules of Civil Procedure provides for the consolidation of actions pending before the court which involve 'a common question of law or fact.' " Boyde v. Uzunoff, No. 9:21-CV-0741 (TJM/ATB), 2021 WL 3185472, at \*1 (N.D.N.Y. July 28, 2021) (quoting FED. R. CIV. P. 42(a)(2)). "As the Second Circuit has recognized, '[t]he trial court has broad discretion to determine whether consolidation is appropriate,' and may consolidate actions sua sponte." Id. (quoting Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990), and citing Devlin v. Transp. Commc'ns Intern. Union, 175 F.3d 121, 130 (2d Cir. 1999)); see Innovation Ventures v. Ultimate One Distrib. Corp., No. 12-CV-5354 (KAM/RLM), 2014 WL 824304, at \*2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases sua sponte under Rule 42(a).") (citation omitted). "The Court must consider in each case the possible risks and benefits of consolidation." Boyde, 2021 WL 3185472, at \*1; see Jacobs v. Castillo, 612 F. Supp. 2d 369, 373 (S.D.N.Y. 2009) ("Consolidation ... further[s] the goal of 'judicial economy' because discovery in each case is likely to be identical, motion practice and trial in the two cases would most likely cover the same facts and some identical issues of law."). "The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Wolm v. Ahern, No. 14-CV-3978 (JFB/GRB), 2014 WL 5171763, at \*1 (E.D.N.Y. Oct. 8, 2014) (citing Johnson, 899 F.2d at 1285).

Here, plaintiff commenced the instant case, 8:24-CV-00849, Lewis v. New York State Board of Elections (hereinafter "Lewis I"), on July 4, 2024. See Compl. (hereinafter "Compl. I"). Nearly seven weeks later, on August 21, 2024, plaintiff commenced a second action, 8:24-CV-01036, Lewis v. New York State Board of Elections (hereinafter "Lewis II"), with the filing of a separate complaint (hereinafter "Compl. II"). The undersigned has reviewed both complaints in each action, and has determined "that common questions of law and fact exist in these cases." Boyde, 2021 WL 3185472, at \*1. "Plaintiff appears to name the same defendant[, the New York State Board of Elections,] and to the extent it can be determined, the cases arise out of the same facts and circumstances and raise the same claims in [both] of these ... actions." Lamothe v. Brown, No. 5:22-CV-161 (TJM/CFH), 2023 WL 316013, at \*1 (D. Vt. Jan. 19, 2023), report and recommendation adopted, 2023 WL 3301220 (D. Vt. May 8, 2023). Notably, both of the complaints filed by plaintiff challenge the constitutionality of New York State's election laws,[3] and his claims derive from his "run to represent New York State's 21st Congressional District" in the upcoming November 2024 general election. Compl. I at 3; Compl. II at 5.[4] Thus, "[c]onsolidating these actions will avoid 'unnecessary repetition and confusion.' " Royal v. Shulkin, No. 1:17-CV-1251 (GTS/CFH), 2018 WL 1229701, at \*1 (N.D.N.Y. Jan. 5, 2018) (quoting Miller v. U.S. Postal Serv., 729 F.2d 1033, 1036 (5th Cir. 1984)), report and recommendation adopted, 2018 WL 1229822 (N.D.N.Y. Mar. 8, 2018); see Morales v. Pallito, No. 1:13-CV-141, 2013 WL 3148411, at \*1 (D. Vt. June 19, 2013) ("[The plaintiff] is bringing the same claim against the same [d]efendant in both cases. [The defendant] has not yet been served and, consequently, there has been no responsive pleading and no discovery. The Court thus finds that the interests of justice will be best served by consolidation, as carrying these two actions forward as one enhances judicial economy, with no prejudice to any party.").

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 16 of 125
Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

3    In Lewis I, plaintiff challenges the constitutionality of sections 6-132, 6-134, 6-136, 6-140, 6-142, and 6-158 of the New York Election Law. See generally Compl. I. In Lewis II, plaintiff challenges the constitutionality of section 16-102 of the New York Election Law. See generally Compl. II.

4    Citations are to the pagination generated by CM/ECF, located in the header of each page.

*3    Accordingly, it is recommended that these two cases be consolidated, with Lewis I as the lead case, and Lewis II as a member case.


## III. Initial Review


### A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." [5] 28 U.S.C. § 1915(e)(2)(B). [6] "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action." Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

5    " 'A case is malicious if it was filed with the intention or desire to harm another.' " Tafari v. Hues, 473 F.3d 440, 442 (2d Cir. 2007) (quoting Andrews v. King, 398 F.3d 1113, 1121 (9th Cir. 2005)). A case "is frivolous when it 'lacks an arguable basis either in law or in fact' " and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].' " Id. (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)).

6    These requirements apply to non-prisoner pro se litigants. See N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law ....

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted). [7] Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 17 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

7       The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.' " Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure") (citations omitted).

 **4**   "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). [8]   Notably, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction ... and (3) a demand for the relief sought ...." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

8       All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 18 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)
2024 WL 4910561

**B. Plaintiff's Complaint**

Plaintiff offers us a brief history lesson on the two-party political system in the United States. See Compl. I at 1-3. As relevant here, plaintiff claims that "[i]n New York State, Republican and Democrat lawmakers alike have created unconstitutional additional requirements in attempts to subvert an individual's Constitution[al] right to candidacy, such as [p]laintiff's, by drafting and passing laws with undue burdens, with the goal of preventing the emergence of any new or independent political party." Id. at 2, ¶4. Plaintiff complains that George Washington "warned of such a scenario," quoting Washington's September 17, 1796, farewell address. Id. at 2, ¶5. Plaintiff then reiterates that

> [election] laws in New York State ... [are] unconstitutional [and] continue to subvert the power of the people [because i]ndividuals who are not aligned with any political party and seeking access to the ballot, such as [p]laintiff, are subjected to a barrage of unconstitutional additional requirements which consequently create undue burdens and unfair circumstances to the would-be independent candidate.

Id. at 2, ¶6.

 **\*5**  Plaintiff asserts that he is "an individual over the age of twenty-five, a citizen of the United States for over seven years and a resident of New York State, thus qualified to be elected to Congress pursuant to the United States Constitution." Compl. I at 3, ¶8. Plaintiff "announced a run to represent New York State's 21st Congressional District on or around March 13, 2024." Id. at 3, ¶12. "Plaintiff began circulating an independent nominating petition on April 16, 2024." [9] , [10] Id. at 3, ¶13. "The deadline to file three thousand five hundred (3,500) signatures for an independent nominating petition was May 28, 2024." [11] Id. at 4, ¶14. "Plaintiff filed approximately three thousand eight hundred twenty eight (3,828) signatures on May 28, 2024." Id. at 4, ¶15. Two individuals, including Margaret Bartley, the chair of the Essex County Democratic Committee, "filed general objections and specifications challenging the petition on various grounds." Compl. II at 56-59. After conducting a prima facie examination of the petition, the New York State Board of Elections "invalidated [p]laintiff's independent nominating petition on or around June 13, 2024, claiming [p]laintiff only submitted three thousand four hundred ninety three (3,493) signatures, leaving [p]laintiff seven (7) signatures short of the unconstitutional requirement." Compl. I at 4, ¶16; see Compl. II at 2, ¶10, 59.

[9]  Plaintiff claims that "[t]hose running for a political party [were] able to circulate petitions from February 27, 2024 until April 4, 2024," but "[i]ndependent petitions were circulated between April 16, 2024 and May 28, 2024." Compl. I at 5, ¶¶24-25.

[10]  Plaintiff alleges that he "was unlawfully evicted on or around May 10, 2024." Compl. I at 5, ¶30. Plaintiff does not specify what he means by "unlawfully evicted," or otherwise explain how this relates to the instant action. Id.

[11]  Plaintiff contends that "petitions for political parties have a filing deadline of Thursday, April 4, 2024 while independent nominating petitions have a deadline of Tuesday, May 28, 2024." Compl. I at 7, ¶37.

On June 13, 2024, "[p]laintiff filed a lawsuit in the Albany County Supreme Court challenging [the New York State Board of Elections'] determination." Compl. I at 4, ¶17; see Compl. II at 2, ¶11. Specifically, plaintiff "filed a proposed order to show cause and petition commencing [a special] proceeding pursuant to Election Law § 6-102 seeking to validate his petition." Compl. II at 59. After plaintiff filed multiple amended petitions, "Honorable Christina L. Ryba signed an order to show cause on June 17, 2024 permitting service by overnight mailing on or before June 19, 2024." Id. at 2, ¶12. "Plaintiff served all parties via overnight mailing by June 19, 2024." Id. at 3, ¶13. However, Ms. Bartley and Paula Collins, plaintiff's political opponent in the upcoming election, "had refused 'actual delivery' of the overnight mailing." Id. at 3, ¶15. "Oral arguments were heard on June 28, 2024[,]" when plaintiff explained "that service was completed timely and thus, the special proceeding was initiated

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 19 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

timely." [12] Id. at 3, ¶¶15-16. However, Ms. Bartley argued that the proceeding should be dismissed as untimely because, under N.Y. Elec. Law § 16-102, plaintiff needed to serve all parties by June 18, 2024, and he failed to do so. See id. at 58-61. Following oral arguments, on July 3, 2024, Hon. Ryba dismissed the proceeding as untimely. See Compl. II. at 58-62.

[12]      However, in Lewis I, plaintiff claims the hearing took place "on or around June 11, 2024." Compl. I at 6, ¶32.

Plaintiff now seeks to "challeng[e] the constitutionality of New York State's election laws[,]" including (1) "§ 6-136 and § 6-142, which dictate the number of signatures required for nominating petitions"; (2) "§ 6-158 which mandates the deadlines imposed for filing nominating petitions"; (3) "§ 6-134 which outlines the rules for nominating petitions"; (4) "§ 6-132 and 6-140, laws governing the required form of nominating petitions"; and (5) "16-102 which dictate[s] the institution of a special proceeding." Compl. I at 1 (citing N.Y. ELEC. LAW §§ 6-132, 6-134, 6-136, 6-140, 6-142, 6-158); Compl. II at 1 (citing N.Y. ELEC. LAW § 16-102). Plaintiff alleges that these laws violate "the First and Fourteenth Amendment of the United States Constitution" and he "requests this court to issue declaratory and injunctive relief preventing the New York State Board of Elections ... from enforcing restrictive and unconstitutional laws and ordering [p]laintiff's name on the ballot for the 2024 general election." Compl. I at 3, ¶7; see Compl. II at 1.

### C. Analysis

**\*6**  Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983 against the New York State Board of Elections, [13] alleging violations of his First and Fourteenth Amendment rights. [14] See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.' ") (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); cf. Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) ("The solicitude afforded to pro se litigants ... most often consists of liberal construction of pleadings, ... [however,] the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented.").

[13]      "Under New York law, the [New York State Board of Elections] is responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." Schulz v. Williams, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (citing N.Y. ELEC. LAW § 3-104).

[14]      Although plaintiff refers to various individuals throughout Compl. I and Compl. II, including Ms. Bartley and Ms. Collins, he does not appear to pursue any claims against them in these actions, as he has made clear that he is solely "challenging the constitutionality of New York State's election laws." Compl. I at 1; Compl. II at 1. Moreover, as indicated previously, plaintiff appears to be an experienced litigator. See supra note 1, 7. Earlier this year, the undersigned reviewed a separate complaint filed by plaintiff in a separate action, and added parties that were mentioned in the complaint but not specifically identified in the "parties" section, in efforts to liberally construe plaintiff's submissions and interpret them to raise the strongest arguments that they suggest. See Lewis v. Franklin Cnty., 8:23-CV-01647 (DNH/ CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10. Plaintiff was extremely unappreciative of this, as he "explicitly object[ed] to the addition of parties," claimed that the undersigned's actions were "improper," and argued that he correctly pleaded the proper parties in the "parties" section of his complaint. Id., Dkt. No. 13 at 1-2. Thus, because the only party identified in the "parties" section of Compl. I and II is the New York State Board of Elections, and given plaintiff's litigation history, it appears that he does not intend to pursue claims against any other parties. See generally Compl. I, Compl. II. In any event, plaintiff's claims regarding Ms. Bartley and Ms. Collins "amount to nothing more than a rant more fitting of an editorial than a legal pleading." Dillon v. Bush, No. 3:05-CV-188 (LAC/MD), 2005 WL 8163072, at \*5 (N.D. Fla. Aug. 12, 2005).

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 20 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. Thus, "[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Kisembo v. N.Y.S. Off. of Child. & Fam. Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)); see Garcia v. Paylock, No. 13-CV-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment.") (citation omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)); see Torres v. Off. of Adult Prob., No. 3:22-CV-00883 (SALM), 2023 WL 3259781, at *4 (D. Conn. May 4, 2023) (explaining that, although the plaintiff may bring a claim for injunctive relief against individual state officials, the plaintiff may not bring such a claim against the state itself or its agencies) (citing Off. of Consumer Couns. v. S. New Eng. Tel. Co., 502 F. Supp. 2d 277, 291 (D. Conn. 2007)).

  **7** " '[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.' " Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); see Marino v. City Univ. of New York, 18 F. Supp. 3d 320, 329 (E.D.N.Y. 2014) (explaining that sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity") (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 30-32 (2d Cir. 1991)); see also Rubin v. N.Y. State Dep't of Motor Vehicles, No. 10-CV-4119 (NGG), 2010 WL 3842011, at *1 (E.D.N.Y. Sept. 28, 2010) ("The Eleventh Amendment bars suits against states, their agencies whether the [p]laintiff seeks relief at law or in equity, absent the state's consent to suit or an express or statutory waiver of immunity.") (citing Pennhurst State School & Hosp., 465 U.S. at 99-102). "[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment[.]" Credico v. N.Y. State Bd. of Elections, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) (citing McMillan v. N.Y. State Bd. of Elections, No. 10-CV-2502 (JG/VVP), 2010 WL 4065434, at *3 (E.D.N.Y. Oct. 15, 2010), aff'd, 449 F. App'x 79 (2d Cir. 2011) (summary order)); see Murawski, 285 F. Supp. 3d at 696 (collecting cases); see also Tiraco v. N.Y. State Bd. of Elections, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity.") (citations omitted). Specifically, "common sense and the rationale of the [E]leventh [A]mendment require that sovereign immunity attach" to the New York State Board of Elections. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50 (1994).

"There are three limited exceptions to state sovereign immunity." Tiraco, 963 F. Supp. 2d at 191. "First, a state may waive its sovereign immunity by consenting to suit in federal court." Id. at 191-92 (citing Iwachiw v. N.Y.C. Bd. of Elections, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002), aff'd, 126 F. App'x 27 (2d Cir. 2005) (summary order)) (additional citation omitted). "Second, Congress may abrogate state sovereign immunity by acting pursuant to a grant of constitutional authority." Leibovitz v. Barry, No. 15-CV-1722 (KAM), 2016 WL 5107064, at *5 (E.D.N.Y. Sept. 20, 2016) (citing Kimel v. Fl. Bd. of Regents, 528 U.S. 62, 80 (2000)). "Third, under the Ex parte Young doctrine, sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law." Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)); see Anghel v. N.Y. State Dep't of Health, 947 F. Supp. 2d 284, 298 (E.D.N.Y. 2013) ("[T]he doctrine of Ex Parte Young, ... 'allows a suit for injunctive [or declaratory] relief challenging the constitutionality of a state official's actions in enforcing state law.' ") (quoting CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)), aff'd, 589 F. App'x 28 (2d Cir. 2015) (summary order).

However, none of these exceptions apply here. First, New York has not expressly waived its sovereign immunity with respect to the claims asserted in plaintiff's complaints. See Edelman v. Jordan, 415 U.S. 651, 673 (1974) ("[W]e will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171 (1909)). "It is well-established

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 21 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

that New York has not consented to § 1983 lawsuits in federal court[.]" Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (citation omitted); see Iwachiw, 217 F. Supp. 2d at 379-80 ("New York State has not waived its Eleventh Amendment [immunity] in claims involving write-in candidates in United States Senatorial Primaries[.]"); see also Dekom v. New York, No. 12-CV-1318 (JS/ARL), 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013) (dismissing § 1983 claims against the New York State Board of Elections on Eleventh Amendment immunity grounds), aff'd, 583 F. App'x 15 (2d Cir. 2014) (summary order).

**\*8** Second, Congress has not "abrogated New York's sovereign immunity from suit by acting pursuant to a grant of constitutional authority." Tiraco, 963 F. Supp. 2d at 192. Indeed, 42 U.S.C. § 1983 does not override New York's sovereign immunity. See Mayo v. Doe, 480 F. Supp. 3d 395, 402 (D. Conn. 2020) ("Section 1983 does not abrogate state sovereign immunity") (citing Quern v. Jordan, 440 U.S. 332, 342 (1979)); see also Sierotowicz v. N.Y. Div. of Hous. & Cmty. Renewal, No. 04-CV-3886 (NGG/LB), 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005) (holding that 42 U.S.C. § 1983 does not override New York's Eleventh Amendment sovereign immunity).

Third, the Ex Parte Young doctrine does not appear to salvage plaintiff's claims for injunctive and declaratory relief against the New York State Board of Elections. See Tiraco, 963 F. Supp. 2d at 192; see Ex parte Young, 209 U.S. 123 (1908). Indeed, plaintiff "does not follow the requirement, established in Ex Parte Young, that a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly." Santiago, 945 F.2d at 32 (citing Pennhurst State Sch. & Hosp., 465 U.S. at 102); see Melrose v. N.Y. State Dep't of Health Off. of Pro. Med. Conduct, No. 05-CV-8778 (SCR/LMS), 2009 WL 211029, at *5 (S.D.N.Y. Jan. 26, 2009) ("[T]he Second Circuit still requires that state officers be named in order for the Ex Parte Young exception to apply.") (citations omitted); see also Harris v. N.Y. State Educ. Dep't, 419 F. Supp. 2d 530, 534 (S.D.N.Y. 2006) ("Actions for injunctive relief under the Ex parte Young exception to [sovereign immunity] constitute suits against state officials, not against the state or state agency itself.").

Specifically, although plaintiff seeks injunctive relief, he has only named the New York State Board of Elections and has failed to name any individual state official as a defendant. See Tiraco, 963 F. Supp. 2d at 192 (dismissing the plaintiff's claims asserted against the New York State Board of Elections based on sovereign immunity, notwithstanding that the plaintiff sought prospective injunctive and declaratory relief, because he "failed to name any state official as a defendant"); cf. Gallagher v. New York State Bd. of Elections, 477 F. Supp. 3d 19, 37 (S.D.N.Y. 2020) ("Plaintiffs' ... claims against the [New York State Board of Elections], therefore, are barred by sovereign immunity. But their federal claims against the [Board's] officers and Governor Cuomo ... are not barred.") (citations omitted); Cohen v. Richardson, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *3 (N.D.N.Y. Feb. 5, 2024) (concluding that the Eleventh Amendment did not bar the plaintiff's suit, where the plaintiff "only [sought] declaratory and prospective injunctive relief" against named individuals employed by the New York State Board of Elections) (citing Cecos Int'l, Inc. v. Jorling, 706 F. Supp. 1006, 1024 (N.D.N.Y. 1989) ("[T]he [E]leventh [A]mendment does not forbid federal courts from granting injunctive relief against a state official acting contrary to the United States Constitution."), aff'd, 895 F.2d 66 (2d Cir. 1990)), reconsideration denied, 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024).

Consequently, the New York State Board of Elections is entitled to sovereign immunity. See Yang v. Kellner, 458 F. Supp. 3d 199, 208 (S.D.N.Y.) ("Because New York has not consented to be sued, and because Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to [the p]laintiffs' ... causes of action, the claims against the [Board of Elections] as a state agency are barred by sovereign immunity."), aff'd sub nom. Yang v. Kosinski, 960 F.3d 119 (2d Cir. 2020); see also McMillan, 449 F. App'x at 80 (affirming dismissal of the plaintiff's claims against the New York State Board of Elections as barred by the Eleventh Amendment); Ulanov v. N.Y. State Bd. of Elections, No. 22-CV-193 (AMD/LB), 2022 WL 173112, at *2 (E.D.N.Y. Jan. 19, 2022) ("Accordingly, the New York State Board of Elections is immune from suit, and the plaintiff's claims against it must be dismissed."), reconsideration denied, 2022 WL 767865 (E.D.N.Y. Mar. 14, 2022).

**\*9** "The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction." Griffith v. New York State, No. 5:23-CV-1266 (DNH/ML), 2024 WL 1641587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) (citing Crumble v. United States, No. 1:23-CV-4427 (LTS), 2023 WL 5102907, at *7 (S.D.N.Y. Aug.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 22 of 125

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

7, 2023), and Nguyen v. Kijakazi, No. 20-CV-0607 (MKB), 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022)), report and recommendation adopted, 2024 WL 1639856 (N.D.N.Y. Apr. 16, 2024); see Wang v. Delphin-Rittmon, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("[S]overeign immunity strips the court of jurisdiction[.]") (citing Smith v. Scalia, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014), aff'd, 2015 WL 13710107 (D.C. Cir. 2015)); see Iwachiw, 217 F. Supp. 2d at 383 (dismissing the plaintiff's section 1983 action against the New York State Board of Elections for lack of subject matter jurisdiction under the Eleventh Amendment, noting "[t]he Eleventh Amendment is an explicit limitation on federal jurisdiction") (internal quotation marks and citations omitted). Thus, it is recommended that plaintiff's claims against the New York State Board of Elections be dismissed without prejudice for lack of subject matter jurisdiction. See Abadi v. City of New York, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed without prejudice.") (citing Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction[.]")).

## IV. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim. See Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *6 (N.D.N.Y. Apr. 5, 2023), report and recommendation adopted, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023); see also Stiegman v. New York State Off. of Info. Tech. Servs., No. 1:19-CV-18 (GTS/CFH), 2019 WL 1762900, at *5 (N.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's claims against a New York state agency as barred by sovereign immunity, but granting the plaintiff leave to amend should the plaintiff wish to name an individual state official pursuant to the Ex Parte Young exception), report and recommendation adopted, 2019 WL 4727444 (N.D.N.Y. Sept. 27, 2019). Thus, it is recommended that plaintiff's complaint be dismissed without prejudice and with leave to amend should plaintiff wish to name a proper party or plead a proper claim. [15]

[15]    Any amended pleading supersedes and replaces a prior pleading in its entirety. In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference. See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation adopted, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015). Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice. An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

## V. Conclusion

**\*10**  **WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application for leave to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against the New York State Board of Elections be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

Lewis v. New York State Board of Elections, Not Reported in Fed. Supp. (2024)

2024 WL 4910561

**RECOMMENDED**, that this matter (8:24-CV-00849, "Lewis I") be **CONSOLIDATED** with 8:24-CV-01036 ("Lewis II"), with the lead case being 8:24-CV-00849, and the member case being 8:24-CV-01036; and it is further

**RECOMMENDED**, that, if consolidation is granted, this Report-Recommendation and Order be docketed and served in all cases, with future filings to be docketed in only the lead case; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint within that time frame, the case be closed without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [16]

[16] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4910561

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4689022

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Scott Phillip LEWIS, Plaintiff,

v.

NEW YORK STATE BOARD OF ELECTIONS, Defendant.

Scott Phillip Lewis, Plaintiff,

v.

New York State Board of Elections, Defendant.

8:24-CV-0849 (GTS/CFH), 8:24-CV-1036 (GTS/CFH)

|

Signed November 6, 2024

**Attorneys and Law Firms**

SCOTT PHILLIP LEWIS, Plaintiff, Pro Se, 1936 Saranac Ave, #3, PMB 411, Lake Placid, NY 12946.

HON. LETITIA A. JAMES, AIMEE COWAN, ESQ., Assistant Attorney General, Counsel for Defendant, 300 South State Street, Suite 300, Syracuse, NY 13202.

**DECISION and ORDER**

GLENN T. SUDDABY, United States District Judge

 **\*1**  Currently before the Court, in each of the two above-captioned civil rights actions filed by Scott Phillips Lewis ("Plaintiff") against the New York State Board of Elections ("Defendant"), is a Report-Recommendation by United States Magistrate Judge Christian F. Hummel recommending that (1) the matters be consolidated, with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036, and (2) Plaintiff's Complaint in each action be *sua sponte* dismissed without prejudice and with leave to amend. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.) In each action, Plaintiff has filed an Objection, and Defendant has filed a Response to that Objection. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 28; Action No. 8:24-CV-1036, Dkt. Nos. 30, 31.) For the reasons set forth below, each Report-Recommendation is accepted and adopted in its entirety, the matters are consolidated (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036), and Plaintiff's Complaint in each action shall be dismissed unless Plaintiff files an Amended Complaint within thirty days of the entry of this Decision and Order.

As an initial matter, the Court finds that (1) because neither of Plaintiff's Objections challenges Magistrate Judge Hummel's recommendation regarding consolidation, that recommendation need be (and is) reviewed only for clear error,[1] and (2) that recommendation survives that clear-error review for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. Nos. 27, 25; Action No. 8:24-CV-1036, Dkt. Nos. 30, 28.)

[1] When no specific objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific

objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(C); *see, e.g., Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

**\*2** Turning to Magistrate Judge Hummel's recommendation regarding the dismissal of Plaintiff's Complaint without prejudice and with leave to amend, the Court begins by finding that, even when viewed with the utmost of special leniency, neither of Plaintiff's Objections contains a specific challenge to either Report-Recommendation other than a specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity. (Action No. 8:24-CV-0849, Dkt. No. 27; Action No. 8:24-CV-1036, Dkt. No. 30.) As a result, the remaining portions of each Report-Recommendation need be (and are) reviewed only for clear error, which the Court finds they survive for the reasons stated in each Report-Recommendation. (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28.)

Finally, with regard to Plaintiff's specific challenge to the recommended dismissal of each Complaint on the grounds that Defendant is entitled to sovereign immunity, the Court must review each such recommendation *de novo.*[2] After doing so, the Court finds that each recommendation survives that *de novo* review for the reasons stated in each of Defendant's Responses: Magistrate Judge Hummel employed the proper legal standards, accurately recited the facts, and correctly applied the law to those facts. (Action No. 8:24-CV-0849, Dkt. No. 28; Action No. 8:24-CV-1036, Dkt. No. 31.) As a result, the challenged portion of each Report-Recommendation is also accepted and adopted in its entirety for the reasons stated therein. (*Id.*)

[2]     When a specific objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

To those reasons, the Court adds only that, as argued by Defendant in each of its Responses, is well established that Defendant is a state agency for the purposes of the Eleventh Amendment. *See, e.g., McMillan v. New York State Bd. of Elections*, 10-CV-2502, 2010 WL 4065434, at \*3 (E.D.N.Y. Oct. 15, 2010) ("The State Board [of Elections] is a state agency for the purposes of the Eleventh Amendment."), *aff'd*, 449 F. App'x 79 (2d Cir. 2011) (summary order); *Iwachiw v. New York City Bd. of Elections*, 217 F. Supp. 2d 374, 380 (E.D.N.Y. 2002) ("[T]he Eleventh Amendment bars the Section 1983 action against the State Board of Elections."), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005); *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("The State Board of Elections is a state agency for the purposes of the Eleventh Amendment ....") (internal quotation marks omitted); *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191 n.7 (E.D.N.Y. 2013) ("It is undisputed that the State Board [of Elections], a New York state executive agency, is an 'arm of the state' entitled to sovereign immunity."); *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010) ("[T]he Board of Elections is a state agency for the purposes of the Eleventh Amendment ....").

**ACCORDINGLY**, it is

**ORDERED** that each Report-Recommendation in the two above-captioned actions (Action No. 8:24-CV-0849, Dkt. No. 25; Action No. 8:24-CV-1036, Dkt. No. 28) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the two above-captioned actions are **CONSOLIDATED** pursuant to Fed. R. Civ. P. 42(a) (with the lead case being Action No. 8:24-CV-0849, and the member case being Action No. 8:24-CV-1036); and it is further

**ORDERED** that Plaintiff's Complaint in each action (Action No. 8:24-CV-0849, Dkt. No. 1; Action No. 8:24-CV-1036, Dkt. No. 1) **shall be DISMISSED** without further Order of the Court, **UNLESS, within THIRTY (30) DAYS** of the entry of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that cures the pleading defects identified in each Report-Recommendation; and it is further

 **\*3  ORDERED** that, should Plaintiff file a timely Amended Complaint, that Amended Complaint shall be, without further Order of this Court, referred to Magistrate Judge Hummel for his review of its pleading sufficiency.

Because the Court certifies that any appeal from this Decision and Order would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3), the Court revokes Plaintiff's *in forma pauperis* status on any appeal from this Decision and Order.

**All Citations**

Slip Copy, 2024 WL 4689022

---

**End of Document**                                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)
|
Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

### I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

### II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. [1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced. [2]

---

[1]   *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]   *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 28 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

[3]    "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICENCY OF THE COMPLAINT

### A. Standard of Review

**\*2**  Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

[4]    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 29 of 125
Gosier v. Collins, Not Reported in Fed. Supp. (2024)
2024 WL 1016392

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B. Background

**\*3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13. [5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

[5]     The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6]     Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

**\*4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 30 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4 $^{th}$, 5 $^{th}$ amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and procicuted for act's and investigate RPD misconduct." *Id.* at 4,13.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

### IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B. Official Capacity Claims

**\*5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's its completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

---

7    To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 32 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

 **\*6**  "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

   **C. Individual Capacity Claims Against Defendant David J. Collins**
It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at \*1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at \*1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

   **D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2**

**1. Unlawful Search and Seizure**

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

 **\*7**  Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint. [8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

[8]    As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

 **\*8**  Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. [9] *Riley v. California*, 573 U.S. 373, 382 (2014).

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

9    In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10    Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

**\*9**   "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 35 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

[11]   If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

**\*10** Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

2024 WL 1016392

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) (B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle."); [12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

[12]   To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

**\*11**  The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e) (2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 37 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g., McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

[13]    *See also supra* note 10 and accompanying text.

### E. Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such an order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### V. OPPORTUNITY TO AMEND

 **\*12**  Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 38 of 125

**Gosier v. Collins, Not Reported in Fed. Supp. (2024)**

2024 WL 1016392

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

[14]    Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

## VI. CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]    *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

## VII. CONCLUSION

**\*13  WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 39 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

### <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

 **\*1**  On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 41 of 125

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1307035

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

---

**End of Document**                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1249698
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rev. Tamesha N. BOYD, a/k/a/ Zalaina Carpenter, on behalf of myself,
my children, my tribe as Black Americans, as a Black nation, Plaintiff,
v.
UNITED STATES GOVERNMENT, et al., Defendants.

1:25-CV-225 (DNH/MJK)
|
Signed April 30, 2025

**Attorneys and Law Firms**

REV. TAMESHA N. BOYD, Plaintiff, pro se.

**ORDER and REPORT-RECOMMENDATION**

MITCHELL J. KATZ, United States Magistrate Judge

**\*1** TO THE HONORABLE DAVID N. HURD, SENIOR U.S. DISTRICT JUDGE:

Plaintiff commenced this action on February 19, 2025, by filing a complaint (Dkt. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Dkt. 2). The Clerk has sent Plaintiff's complaint and IFP application to this Court for review. (Dkt. 1, 5).

**I. IFP Application**

Plaintiff declares in her IFP application that she is unable to pay the filing fee. (Dkt. 5). After reviewing her application, this Court finds that Plaintiff is financially eligible for IFP status.

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, courts must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which states that courts shall dismiss a case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Although courts have a duty to show liberality toward *pro se* litigants and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, courts still have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal*, 556 U.S. at 678). A pleading that contains allegations that " 'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II. Complaint

**\*2** The Court will not provide a full recitation of the facts giving rise to Plaintiff's alleged claims against the various Defendants. In short, Plaintiff claims that she, together with her children, have been denied "essential healthcare, exacerbating [her] physical and psychological injuries." (Compl., Dkt. 1, at 12). [1] Plaintiff alleges that despite "repeated requests for necessary care [s]ince 2014, Plaintiff's [ ] medical conditions have **worsened**," including the loss of [her] **reproductive organs**, due to lack of medical competence ..." (Compl., at 23) (emphasis in original). According to the complaint, the Albany County Department of Social Services, together with the Social Security Administration, "have consistently **denied healthcare** and treatment necessary for **Plaintiff's survival** ..." (*Id.*) (emphasis in original).

[1] All page references are to those assigned by the CM/ECF pagination system.

The complaint further alleges that the Social Security Administration, the Internal Revenue Service, and U.S. Treasury Department have shared Plaintiff's "**personal, medical, and financial data** with **private corporations** and other government entities, with no regard for **due process**, and without Plaintiff's consent or knowledge." (Compl., at 24) (emphasis in original). According to the complaint, Plaintiff alleges that the Albany County Department of Education failed her two oldest children and "separated [them] from [Plaintiff] during their most critical developing moments to corrupt them into being criminal[s] one day" (Compl., at 25). Plaintiff seeks monetary and non-monetary relief.

## III. Statute of Limitations

Claims brought under Section 1983 generally must be filed within three years of the date a claim accrues. [2] Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

[2] The statute of limitations for Section 1983 claims is found in the "general or residual [state] statute [of limitations] for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In New York, that period is three years. See N.Y. C.P.L.R. § 214(5).

Here, the complaint alleges that Plaintiff's family has been denied healthcare since **2014** (Compl., at 6, 12, 33), that Plaintiff has been "forced to earn money for the government" since **2008** (Compl., at 23), and that the Social Security Administration has detained Plaintiff's records since **2014** (Compl., at 25). To the extent the complaint asserts § 1983 claims, they accrued as early as 2008 and as late as 2014, and in either scenario, they appear to be time barred unless they are subject to an exception – the continuing violation doctrine and/or equitable tolling.

Equitable tolling is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). New York law recognizes the equitable tolling doctrine where a plaintiff

demonstrates that they were induced by fraud, misrepresentations, or deception to refrain from timely commencing an action, and that they acted with due diligence throughout the period to be tolled. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007); *see also Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances.").

"[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful [act],' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Given the unintelligible nature of the complaint, the Court cannot discern whether the continuing violation doctrine and/or equitable tolling are available to preserve Plaintiff's claims.

**\*3** To the extent that Plaintiff asserts claims not arising under § 1983, the complaint does not plausibly allege when they accrued, leaving the Court unable to determine whether they are time barred or subject to one of the exceptions enumerated above.

The Court recommends that the complaint be dismissed without prejudice as untimely, and that plaintiff be afforded leave to plead facts, to the extent they exist, that would support the court's application of the continuing violation doctrine and/or equitable tolling.

## IV. Fed. R. Civ. P. 8 and 10

Fed. R. Civ. P. 8(a)(2) requires a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief ..." "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). Rule 8 also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.' " *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at \*2 (N.D.N.Y. 2024) (quoting Fed. R. Civ. P. 8(d)). Accordingly, allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Next, as relevant here, Fed. R. Civ. P. 10 provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores*, 189 F.R.D. at 55 (internal quotations and citation omitted).

A complaint that fails to comply with these pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996); *see also Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (a court may dismiss a complaint for failure to comply with Rule 8(a) where it "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised").

Here, the complaint is largely unintelligible and, in most instances, is nothing more than a rambling dissertation on what Plaintiff perceives to be historical injustices. As presented, neither the Court nor Defendants can reasonably be expected to identify Plaintiff's claims. *See Ghosh v. New York City Housing. Auth*ority, No. 21-CV-6139, 2023 WL 3612553, at \*6 (S.D.N.Y. Feb. 27, 2023) ("It is not the Court's job—nor the opposing party's—to decipher a complaint that is 'so poorly composed as to be functionally illegible.' ") (quoting *Avramham v. N.Y.*, 2020 WL 4001628, at \*2 (S.D.N.Y. July 15, 2020)). Given the arduous

task of understanding Plaintiff's complaint, the Court cannot thoughtfully evaluate whether the allegations state a claim for relief. The Court therefore recommends that even if the complaint is not dismissed as time barred, it should nevertheless be dismissed under Fed. R. Civ. P. 8 and 10 without prejudice and with leave to amend.


## V. Minor Children

**\*4**   "A litigant in federal court has a right to act as his or her own counsel." *Cheung v. Youth Orchestra Found*, 906 F.2d 59, 61 (2d Cir. 1990) (citing 28 U.S.C. § 1654). "The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." *Id.* However, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id.* This is because the choice to appear *pro se* is not a true choice for minors who, under state law, cannot determine their own legal actions. *Id.* (citing Fed. R. Civ. P. 17(b)). Minor children "are entitled to trained legal assistance so their rights may be fully protected." *Cheung*, 906 F.2d at 61. Thus, the "court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child." [3] *Fauconier v. Comm. on Special Educ.*, No. 02-CV-1050, 2003 WL 21345549, at \*1 (S.D.N.Y. June 10, 2003), *aff'd sub nom. Fauconier v. Comm. on Special Educ.*, 112 F. App'x 85 (2d Cir. 2004). Accordingly, even if this action is not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the non-attorney Plaintiff may not appear *pro se* on behalf of her minor children, and the complaint must therefore be dismissed as asserted on their behalf without prejudice.

[3]   The Second Circuit has carved out limited exceptions to this general rule, including for claims filed on behalf of minors under the Individuals with Disabilities Education Act ("IDEA") and actions relating to social security benefits. Liberally construed, plaintiff's complaint does not fall within any of the noted, limited exceptions.


## VI. Tribe as Black Americans and Black Nation

The complaint, to the extent it purports to assert a class, collective or representative action on behalf of the "Tribe as Black Americans [and] as a Black Nation," must be dismissed without prejudice and with leave to amend, but only if counsel is retained. The Second Circuit has held that "because *pro se* means to appear for one's self a person may not appear on another's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). Courts have applied this principle to preclude *pro se* litigants from bringing class action claims. *See Kimber v. Tallon*, 556 F. App'x 27, 28 (2d Cir. 2014) (summary order) ("Generally, it is inappropriate for a *pro se* litigant to represent the interests of a class."); *see also Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) (explaining that it is "well established" that a *pro se* litigant "cannot adequately represent the interests of other class members") (summary order); *Chapman v. U.S. Dep't of Justice*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) (dismissing a plaintiff's class action claims because he was "proceeding *pro se* and cannot bring a class action on behalf of others"). The Court therefore recommends that the complaint be dismissed without prejudice and with leave to amend but only if counsel is retained, as to those on whose behalf Plaintiff asserts claims.


## VII. New York State Department of Education

The Court recommends that Plaintiff's claims against the New York State Department of Education be dismissed with prejudice and without leave to amend.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

Even if this action is not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint should nevertheless be dismissed with prejudice and without leave to amend as to the New York State Department of Education. *See Sherman v.*

*Harris*, No. 11-CV-4385, 2012 WL 4369766, at *6 (E.D.N.Y. Sep. 24, 2012) ("The New York State Education Department is a state agency entitled to Eleventh Amendment immunity") (citing *Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 480 (2d Cir. 2002), *cert. denied*, 537 U.S. 1227 (2003)).

## VIII. Albany County Department of Social Services

**\*5**  Although Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state, [i]t does not [ ] extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Mulvihill v. New York*, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). " 'Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.' " *Meyers v. Becker*, No. 1:23-CV-173 (DNH/CFH), 2023 WL 3079611, at *4 (N.D.N.Y. Apr. 5, 2023) (quoting *Mulvihill v. New York*, 956 F. Supp. 2d 425, 428 (W.D.N.Y. 2013) (alteration in original) (quoting *Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F.Supp.2d 539, 552 (S.D.N.Y. 2009)). The Albany County Department of Social Services therefore is not an appropriate party to this action. *See Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("The [p]laintiffs' claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity."), *aff'd*, 560 F. App'x 6 (2d Cir. 2014) (summary order). The Court therefore recommends that even if the complaint is not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint should nevertheless be dismissed with prejudice and without leave to amend as to the Albany County Department of Social Services.

## IX. Federal Government and its Agencies

The Court recommends that Plaintiff's claims against the United States Government, the Social Security Administration, the Internal Revenue Service, the United States Department of the Treasury, Donald John Trump Jr., in his official and individual capacities, and Elon Musk, in his individual and acting official capacities related to DOGE and other corporate interests, all be dismissed with prejudice and without leave to amend.

"It is well-settled that the United States, its agencies, and federal officers in their official capacity, have sovereign immunity from suit and can only be sued with their consent and under whatever terms Congress may impose." *Hyped Holdings LLC v. United* States, No. 22-CV-5340, 2023 WL 6121784 (E.D.N.Y. Sept. 19, 2023) (citing *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.")). "Absent an unequivocally expressed statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *Vidurek v. Koskinen*, 789 F. App'x 889, 892-93 (2d Cir. 2019) (summary order) (citing *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010)). Accordingly, Plaintiff's claims against the United States, its agencies, President Trump, in his official capacity, and Elon Musk, in his individual capacity, should all be dismissed with prejudice and without leave to amend.

Plaintiff's claims against President Trump and Elon Musk, in their individual capacities, should also be dismissed with prejudice and without leave to amend. Liberally construed, there are no allegations that plausibly suggest that either President Trump or Elon Musk engaged in any conduct outside the scope of their employment by the United States government. Further, there are no facts that Plaintiff could plausibly allege that would give rise to personal liability.

## X. Opportunity to Amend

Generally, before courts dismiss a *pro se* complaint or any part of the complaint *sua sponte*, it should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

**\*6** Based on its initial review of the complaint, the Court recommends that:

(1) the complaint be dismissed without prejudice as untimely with leave to amend to plead facts, to the extent they exist, that would support the Court's application of the continuing violation doctrine and/or equitable tolling;

(2) if not dismissed as time barred, the complaint be dismissed in its entirety pursuant to Fed. R. Civ. P. 8 and 10 without prejudice and with leave to amend;

(3) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed without prejudice and without leave to amend as to Plaintiff's minor children until they are represented by counsel or reach the age of majority;

(4) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed without prejudice and with leave to amend but only if counsel is retained, with respect to claims asserted to be on behalf of "Black Americans" and the "Black Nation;"

(5) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed as to the New York State Department of Education with prejudice and without leave to amend;

(6) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and10, the complaint be dismissed as to the Albany County Department of Social Services with prejudice and without leave to amend;

(7) if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed with prejudice and without leave to amend as to the United States Government, the Social Security Administration, the Internal Revenue Service, the United States Department of the Treasury, Donald John Trump Jr., in his official and individual capacities, and Elon Musk, in his individual and acting official capacities related to DOGE and other corporate interests; and

If the District Court approves this recommendation and allows Plaintiff to submit a proposed amended complaint, Plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all her claims in the new pleading and may not incorporate by reference any part of her original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, [4] and it is further

[4] The Court notes that although Plaintiff's IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in the future regarding this action, including but not limited to copying and/or witness fees.

**RECOMMENDED,** the complaint be dismissed **WITHOUT PREJUDICE** as untimely, and that Plaintiff be afforded leave to plead facts, to the extent they exist, that would support the Court's application of the continuing violation doctrine and/or equitable tolling, and it is further

**RECOMMENDED** that if not dismissed as time barred, the complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 8 and10 **WITHOUT PREJUDICE** and with leave to amend, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITHOUT PREJUDICE** and without leave to amend as to Plaintiff's minor children until they are represented by counsel or reach the age of majority, and it is further

**\*7 RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITHOUT PREJUDICE** and with leave to amend, but only if counsel is retained, to the extent that it asserts claims on behalf of "Black Americans" and the "Black Nation," and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITH PREJUDICE** and without leave to amend as to the New York State Department of Education, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed as to the Albany County Department of Social Services **WITH PREJUDICE** and without leave to amend, and it is further

**RECOMMENDED**, that if not dismissed as time barred and/or under Fed. R. Civ. P. 8 and 10, the complaint be dismissed **WITH PREJUDICE** and without leave to amend against the United States Government, the Social Security Administration, the Internal Revenue Service, the United States Department of the Treasury, Donald John Trump Jr., in his official and individual capacities, and Elon Musk, in his individual and acting official capacities related to DOGE and other corporate interests, and it is further

**ORDERED,** that while Plaintiff may file objections to this Order and Report-Recommendation, before Plaintiff submits any amended pleading, she should wait for the District Court to rule on the above Orders and Recommendations, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on Plaintiff by regular mail. [5]

---

[5]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2025 WL 1249698

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1890326

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Rev. Tamesha N. BOYD, Plaintiff,

v.

UNITED STATES GOVERNMENT, et al., Defendants.

1:25-CV-0225

|

Signed July 9, 2025

**Attorneys and Law Firms**

REV. TAMESHA N. BOYD, Plaintiff, pro se, 9 O Connell Street, Albany, NY 12209

## ORDER ON REPORT & RECOMMENDATION

David N. Hurd, United States District Judge

**\*1** On February 19, 2025, plaintiff Reverend Tamesha N. Boyd ("plaintiff"), acting *pro se*, commenced this action by filing a civil rights complaint alleging, *inter alia*, data exploitation, denial of health care, economic disenfranchisement, and the "denial of sovereignty" against the New York State Department of Education ("NYSDOE"), the United States Government (the "United States"), Albany County Department of Social Services ("ACDOSS"), President Donald J. Trump, in both his individual and official capacities ("President Trump"), Elon Musk ("Musk"), in both his individual and acting official capacities related to Department of Government Efficiency ("DOGE"), the Social Security Administration (the "SSA"), the Internal Revenue Service (the "IRS"), and the United States Department of Treasury (the "Treasury"). Dkt. No. 1. Along with her complaint, plaintiff also filed an application to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On April 30, 2025, U.S. Magistrate Judge Mitchell J. Katz granted plaintiff's IFP Application and conducted an initial review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Dkt. No. 4. Upon his review of the complaint, Judge Katz advised by Report & Recommendation ("R&R") that: (1) plaintiff's complaint should be dismissed without prejudice as untimely;[1] (2) insofar as plaintiff's complaint is *not* dismissed as untimely, it should be dismissed without prejudice pursuant to Federal Rules of Civil Procedure ("Rules") 8 and 10; (3) plaintiff's complaint should be dismissed without prejudice and with leave to amend, so long as counsel is retained, to the extent that the complaint asserts claims on behalf of "Black Americans" and/or the "Black Nation"; and (4) insofar as plaintiff's complaint is not dismissed as either time barred or under Rules 8 or 10, that it be dismissed *with* prejudice and without leave to amend as each defendant named in this action is immune from suit.[2] Dkt. No. 4; *see infra*. Judge Katz also advised that plaintiff, while permitted to file objections to the R&R, should await a ruling from this Court before submitting any amended pleadings. *Id*.

[1]   Specifically, Judge Katz advised that plaintiff be afforded leave to plead facts, insofar as they exist, that would support the Court's application of the continuing violation doctrine or equitable tolling. Dkt. No. 4.

[2]   Plaintiff brings claims against Trump in both his individual and official capacities. It also brings claims against Musk in both his individual capacity as well as his acting official capacities related to the Department of Government Efficiency and his corporate interests.

2025 WL 1890326

Plaintiff has filed a series of letter motions in addition to formal objections to the R&R. Dkt. Nos. 5–8. [3] Upon *de novo* review, Judge Katz's R&R will be accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

3

     Plaintiff first letter motion, Dkt. No. 5, requests: (1) that her IFP status be reaffirmed; (2) a docket correction; [3] (3) to add additional named defendants; (4) to add a claim of retaliatory intervention with respect to certain SSA processes; and (5) a temporary restraining order and protective order against all defendants. This motion includes attached letters, apparently from the SSA, terminating plaintiff's receipt of Disability Insurance Benefit ("DIB") payments beyond May 31, 2025. *Id*. Plaintiff's second letter motion, Dkt. No. 6, requests: (1) clarification regarding the R&R; (2) that certain pages of the R&R be stricken on the basis of their relatedness and/or relevance; (3) to "protect plaintiff's constitutional and statutory right[s] to due process, equal protection, and fair adjudication under 42 U.S.C. § 1981, the Civil Rights Act of 1866, and the Fifth and Fourteenth Amendments of the U.S. Constitution." Plaintiff also appears to allege that the Court failed to directly address the merits of her complaint and that, in doing so, gave, or risked giving, the appearance of, *inter alia*, "complicity with systemic suppression of race-based legal remedies." *Id*. Plaintiff seeks written assurance that the Court has not acted pursuant to any executive policy or internal bias that would violate plaintiff's Constitutional rights. *Id*. Plaintiff's third letter motion, Dkt. No. 8, appears to allege procedural and substantive violations against various officials including judicial misconduct by United States District Judge Lawrence E. Kahn, judicial bias and intimidation by Judge Katz in his R&R, procedural delays and due process violations by the Courts, more broadly, disparate treatment, and racial bias. *Id*. But plaintiff offers only bare conclusions as to her claims against either Judge, nor does she offer any additional facts to support a legal claim for disparate treatment and/or racial bias. Insofar as plaintiff's letter motions seek leave to amend, that request will be granted. *Infra*. Plaintiffs remaining requests will be denied.

**\*2** Broadly construed, plaintiff argues that Judge Katz improperly dismissed her claims when he recommended dismissal *without leave to amend*. *Id*. Plaintiff contends that Judge Katz's R&R is a misapplication of 28 U.S.C. § 1915, and that it was not designed to dismiss claims of the nature alleged in her complaint. Dkt. No. 7. Plaintiff also argues the language in the R&R reflects a "hostile judicial culture." *Id*. Finally, plaintiff alleges that defendants should not be granted immunity for "racialized, unconstitutional, and private" acts. *Id*. In addition, plaintiff argues the continuing violation doctrine applies to her claims because the violations she alleged in her complaint have continued, without end, since at least 2014. *Id*.

Even broadly construed, plaintiff's series of letter motions and formal objections fail to set forth any meritorious arguments that warrant disturbing Judge Katz's well-reasoned R&R. As an initial matter, the Court finds that Judge Katz properly applied 28 U.S.C. § 1915 to plaintiff's complaint. Dkt. No. 4. Indeed, plaintiff filed an IFP Application, Dkt. No. 2, which required Judge Katz to conduct a sufficiency review of plaintiff's complaint. See 28 U.S.C. § 1915(e). Further, upon careful review, the Court finds the entirety of Judge Katz's R&R to be devoid of intimidation, impropriety, or bias. *See generally* Dkt. No. 4. To the contrary, Judge Katz conducted a fair reading of plaintiff's pleadings and used legal terms entirely in the context of a legal matter. Further, to use such terms is not, in this Court's view, indicative of, or tantamount to, hostility.

Judge Katz also correctly advised that each of plaintiff's claims, as pleaded, be dismissed on jurisdictional grounds. First, insofar as plaintiff, a non-attorney, sought to bring claims on behalf of her children, those claims are to be dismissed. Judge Katz further correctly advised that, insofar as plaintiff's complaint attempts to bring claims on behalf of the "Tribe as Black Americans [and] as a Black Nation," those claims must be dismissed for the very same reason. While litigants in federal court have a statutory right to act as their own counsel, proceeding *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." *Cheung v. Youth Orchestra Found.*, 906 F.2d 59, 61 (2d Cir. 1990). But "non-attorney parent[s] must be represented by counsel in bringing an action on behalf of [their] child[,]" *id.*, or "on another's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Next, Judge Katz also correctly advised that plaintiff's claims against all defendants should be dismissed with prejudice as each defendant is immune from suit. Dkt. No. 4 at 10–12. Specifically, Judge Katz properly advised that plaintiff's claims against NYSDOE and ACDOSS should be dismissed with prejudice because defendant, as an agency of New York State, is immune from suit in federal court under the Eleventh Amendment. Dkt. No. 4 at 10–12. Next, Judge Katz correctly advised that plaintiff's

2025 WL 1890326

claims against the remaining defendants—the United States Government and its relevant agencies and officers as named above —should also be dismissed with prejudice on the basis of sovereign immunity. *Id*. at 12–13. Finally, Judge Katz correctly advised that plaintiffs' claims against President Trump and Musk in their individual capacities should be dismissed with prejudice, as plaintiff failed to plausibly allege any facts to suggest that either defendant engaged in conduct outside the scope of their employment and/or duties as an officer of the United States. *Id*. at 13–14. Accordingly, these claims will be dismissed.

Therefore, for substantially the reasons stated *supra*, the Court finds plaintiff's remaining arguments regarding a continuing violation are moot as she has failed to allege claims against a single defendant who is not immune from suit. Nevertheless, given their *pro se* status, this Court will *sua sponte* grant plaintiff thirty (30) days from the date of the entry of this Decision and Order to submit a proposed amended complaint, consistent with the rulings in this Order, for the Court's review and consideration. [4] If plaintiff fails to submit a proposed amended complaint within thirty (30) days of the entry of this Decision and Order, this matter will be closed.

[4]     As Judge Katz advised, any amended complaint must be a complete and separate pleading. Plaintiff must state all of her claims in the new pleading and may not incorporate by reference any part of her original complaint. Dkt. No. 4 at 15.

**\*3**  Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 4) is ACCEPTED and ADOPTED in all respects;

2. Plaintiff's complaint is DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted;

3. Plaintiff's letter motions (Dkt. Nos. 5–8) are DENIED; and

4. Plaintiff shall have **thirty (30) days** from the date of the entry of this Order to submit a proposed amended complaint, consistent with this Order, for the Court's review; and

5. If plaintiff fails to submit a proposed amended complaint within **thirty (30) days** of the entry of this Order, this action shall be closed without further Order of the Court;

6. The Clerk of the Court shall mail a copy of this Order to plaintiff by regular mail.

The Clerk of the Court is directed to terminate the pending motions (Dkt. Nos. 4, 5, 6, 8).

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2025 WL 1890326

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint.[1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

---

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which

the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3**  This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999)[3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]  Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4]  Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of character [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

**\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga District Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts [5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5]     Plaintiff did not provide any transcripts.

### C. Discussion [6]

[6]     As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 56 of 125

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5**  As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/ or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7]    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged

violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. See <u>Porter v. Nasci</u>, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see</u> <u>also</u> <u>Diamond "D" Constr. Corp. v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6**   "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." <u>Zavalidroga v. Girouard</u>, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing <u>Mireles v. Waco</u>, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " <u>Id.</u> (quoting <u>Huminski v. Corsones</u>, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." <u>Id.</u> (citation omitted); <u>see</u> <u>Positano v. New York</u>, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." <u>Zavalidroga</u>, 2017 WL 8777370, at *8 (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " <u>Id.</u> (quoting <u>Mireles</u>, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " <u>Pacherille v. Burns</u>, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting <u>Ceparano v. Southampton Just. Ct.</u>, 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Ceparano</u>, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " <u>Ceparano</u>, 404 F. App'x at 539 (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " <u>Bliven v. Hunt</u>, 579 F.3d 204, 209 (2d Cir. 2009) (quoting <u>Mireles</u>, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." <u>McCray v. Lewis</u>, No. 16-CV-3855 (WFK/ VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. <u>See</u> <u>Pacherille v. Burns</u>, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7**   In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." <u>Benyi v. New York</u>, No. 3:20-CV-1463 (DNH/ ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest

that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

[9] Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/ Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH**

**PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10]    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have
**FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2024 WL 4870495

---

**End of Document**                                             © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4744735
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jay BRADSHAW, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

9:23-CV-0602 (MAD/ML)
|
Signed July 24, 2023

**Attorneys and Law Firms**

JAY BRADSHAW, 08-A-3654, Plaintiff, pro se, Great Meadow Correctional Facility, Box 51, Comstock, NY 12821.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

**\*1** Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a request for preliminary injunctive relief. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion"). [1] Plaintiff, who is incarcerated at Great Meadow Correctional Facility, has not paid the filing fee for this action.

[1]   The complaint was also accompanied by an application seeking leave to commence a new civil action in this District as required by the Pre-Filing Order entered by the Honorable Glenn T. Suddaby on March 3, 2022. *See In re: Bradshaw*, No. 9:21-PF-0002 (GTS), Dkt. No. 4. By Decision and Order entered on May 18, 2023, the Honorable Brenda K. Sannes granted plaintiff's application to commence this action. *Id.*, Dkt. No. 10.

## II. IFP STATUS

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00). [2] The Court must also determine whether the "three strikes" provision of 28 U.S.C. § 1915(g) ("Section 1915(g)") bars the plaintiff from proceeding IFP and without prepayment of the filing fee. [3] More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Bradshaw v. Ahitticci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

2     "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee ... at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

3     The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007). The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law. *Tafari*, 473 F.3d at 442-43.

 **\*2** In this case, plaintiff has demonstrated economic need through his IFP Application, and has filed the inmate authorization form required in the Northern District of New York. *See* Dkt. Nos. 2, 3. Thus, the Court must determine whether the "three strikes" rule of Section 1915(g) bars plaintiff from proceeding with this action IFP.


### A. Determination of "Strikes"

Plaintiff is a frequent litigator, having commenced, in addition to this action, at least twenty-five previously filed civil actions in the district courts in the Second Circuit since 2008. *See* PACER Case Locator <https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf> (last visited July 18, 2023). The following is a list of those actions: (1) *Bradshaw v. McQueen*, No. 08-CV-5518 (S.D.N.Y. filed June 18, 2008); (2) *Bradshaw v. Officer Banks*, No. 09-CV-0966 (S.D.N.Y. filed Feb. 4, 2009); (3) *Bradshaw v. Brown*, No. 13-CV-4308 (E.D.N.Y. filed July 31, 2013); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166 (E.D.N.Y. filed Apr. 13, 2015); (5) *Bradshaw v. The City of New York*, No. 15-CV-4638 (S.D.N.Y. filed June 10, 2015); (6) *Bradshaw v. The City of New York*, No. 15-CV-5481 (S.D.N.Y. filed July 10, 2015); (7) *Bradshaw v. The City of New York*, No. 15-CV-7074 (S.D.N.Y. filed Sept. 8, 2015); (8) *Bradshaw v. The City of New York*, No. 15-CV-8252 (S.D.N.Y. filed Oct. 20, 2015); (9) *Bradshaw v. The City of New York*, No. 15-CV-9031 (S.D.N.Y. Nov. 17, 2015); (10) *Bradshaw v. The City of New York*, No. 17-CV-1199 (S.D.N.Y. filed Feb. 16, 2017); (11) *Bradshaw v. The City of New York*, No. 17-CV-1168 (E.D.N.Y. filed Feb. 27, 2017); (12) *Bradshaw v. The City of New York*, No. 18-CV-8215 (S.D.N.Y. filed Sept. 7, 2018) ("*Bradshaw v. The City of New York IX*"); (13) *Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); (14) *Bradshaw v. Burns*, No. 19-CV-931 (N.D.N.Y. filed July 31, 2019) ("*Bradshaw v. Burns*"); (15) *Bradshaw v. Annucci*, No. 20-CV-6083 (W.D.N.Y. filed Feb. 6, 2020); (16) *Bradshaw v. Piccolo*, No. 20-CV-6106 (W.D.N.Y. Feb. 18, 2020); (17) *Bradshaw v. Piccolo*, No. 20-CV-6368 (W.D.N.Y. filed June 4, 2020); (18) *Bradshaw v. Annucci*, No. 20-CV-6548 (W.D.N.Y. Sept. 29, 2020); (19) *Bradshaw v. Piccolo*, No. 21-CV-6050 (W.D.N.Y. filed Jan. 19, 2021); (20) *Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); (21) *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*"); and (22) *Bradshaw v. Marshal*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021) ("*Bradshaw v. Marshal*"); (23) *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci*"); (24) *Bradshaw v. Brand*, No. 21-CV-0942 (N.D.N.Y. filed Aug. 20, 2021) ("*Bradshaw v. Brand*"); and (25) *Bradshaw v. Bishop*, No. 22-CV-0094 (GTS/ML) (N.D.N.Y. filed Feb. 2, 2022) ("*Bradshaw v. Bishop*").[4]

4     *Bradshaw v. Locke, Bradshaw v. Marshall,* and *Bradshaw v. Annucci* are all currently pending in this District. On December 3, 2021, judgment was entered in *Bradshaw v. Brand* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 6. On February 18, 2022, plaintiff's IFP status was revoked in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*, and those actions were later dismissed without prejudice based on plaintiff's failure to comply with the filing fee requirement. *See Bradshaw v. Gordon*, Dkt. Nos. 67, 75; *Bradshaw v. Uhler*, Dkt. Nos. 72, 81. On April 28, 2023, judgment was entered in *Bradshaw v. Bishop* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 27.

 **\*3** Upon review of these actions, and consistent with the determinations reached by the Honorable Brenda K. Sannes in *Bradshaw v. Locke* and *Bradshaw v. Burns*, by the Honorable Glenn T. Suddaby in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*,

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 62 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

and by this Court in *Bradshaw v. Marshal*, this Court once again finds that, as of the date that plaintiff commenced this action, he had acquired at least four "strikes." [5] As a result, plaintiff's IFP Application must be denied unless it appears that the "imminent danger" exception to the "three strikes" rule set forth in Section 1915(g) is applicable to this action.

[5]     The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact"). In *Bradshaw v. Locke*, Judge Sannes specifically discussed each of these four "strikes" in her initial Decision and Order entered on May 9, 2019. *See id.*, Dkt. No. 8.

**B. Applicability of the "Imminent Danger" Exception**

The "imminent danger" exception protects a prison inmate exposed to potential serious physical injury from the consequences of his earlier mistakes in filing frivolous litigation. Generally speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010). The Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on." *Id.* at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007); *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018). However, "allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts." *Carter v. New York State*, No. 20-CV-5955, 2020 WL 4700902, at *1 (S.D.N.Y. Aug. 12, 2020) (citing *Chavis*, 618 F.3d at 170 (holding that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.")).

 **\*4**  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99.

In this case, the complaint alleges that at the time of filing, plaintiff had been continuously confined in the Residential Rehabilitation Unit ("RRU") for one year, where he was scheduled to remain housed for at least an additional year. Compl., ¶¶ 221, 233, 248, 259-260, 303. The complaint further alleges that plaintiff is confined in his cell for all but two hours each day, and had not received, throughout the year that he was confined in the RRU, an individual rehabilitation plan or private mental health therapy, despite a history of self-harm and ongoing anxiety and depression associated with his confinement status. *Id.*, ¶¶ 307-313, 332-340. The complaint also identifies several incidents of plaintiff being assaulted by other inmates, alleges that he is likely to be harmed in the future if he continues to be placed in a double-bunk cell, and further alleges that he was informed three days before the complaint was filed that he would be placed in a double-bunk cell "as soon as possible." *Id.*, ¶¶ 96-179.

Bradshaw v. Ahittuci, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 63 of 125

2023 WL 4744735

At this stage of the proceeding, the Court finds that the allegations in the complaint plausibly suggest that plaintiff was "under imminent danger of serious physical injury" when he signed his complaint on April 17, 2023. *See, e.g., Lindsey v. Hoem*, 799 Fed. App'x 410, 412 (7th Cir. 2020) ("Lindsey's first complaint alleges that prison staff have placed Lindsey in danger of imminent physical harm by failing to treat his PTSD. Suicidal ideation and a risk of self-harm, particularly for a mentally ill prisoner like Lindsey in prolonged segregation, satisfy the statutory imminent-danger exception that the court adopted in its sanction order.") (citing, *inter alia, Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017)); *Abreu v. Lira*, No. 12-CV-1385 (NAM/DEP), Dkt. No. 5 (N.D.N.Y. Feb. 28, 2013) (granting "three strikes" plaintiff leave to proceed in forma pauperis, finding that plaintiff's allegations that he was "denied adequate medical care for his serious medical and mental health needs at Upstate Correctional Facility" were sufficient to plausibly suggest that he was "under imminent danger of serious physical injury" when the action was filed). Thus, plaintiff is granted leave to proceed IFP in this action.

The Court notes that this is a preliminary finding which defendants are entitled to challenge or refute in future filings. Thus, plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face "imminent danger" when he commenced this action or is otherwise not entitled to proceed IFP.

## III. INITIAL REVIEW OF THE COMPLAINT

### A. Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from officers and employees of governmental entities, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e). Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that Sections 1915(e) and 1915A are available to evaluate prisoner pro se complaints).

**\*5** Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 64 of 125

**Bradshaw v. Ahnucci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

### B. Summary of the Complaint

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

The forty-five (45) page handwritten complaint, which is generally organized by claim, alleges that on multiple occasions between June, 2021 and April, 2023, corrections officials subjected plaintiff to unnecessary force, failed to protect him from assaults by other inmates, issued him false misbehavior reports that resulted in excessive restrictive confinement, deprived him of constitutionally adequate conditions-of-confinement, denied him access to mental health treatment, interfered with his mail, subjected him to retaliatory cell searches, and deprived him of personal property. *See generally*, Compl. The following facts are set forth as alleged by plaintiff in his complaint.

### 1. Use-of-Force Incidents Involving Corrections Officials

The complaint identifies the following use-of-force incidents involving corrections officials: (1) defendant Corrections Officer Osborn "maliciously slamm[ing] plaintiff's hand in the cell hatch on June 18, 2021[,]" Compl., ¶ 16 (hereinafter, "the First Assault"); (2) defendant Corrections Sergeant John Doe #1 forcibly pressing plaintiff into a wall while handcuffed, despite plaintiff's complaints of pain, on June 24, 2021, Compl., ¶ 17 (hereinafter, "the Second Assault"); (3) defendant Corrections Officer Phillips "slamm[ing]" plaintiff to the floor of his cell and placing him in a "choke hold" while defendant Corrections Officer Tyler "searched plaintiff's anal cavity for contraband" on July 1, 2021, Compl., ¶¶ 19-22 (hereinafter, "the Third Assault"); (4) defendant Osborn "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on September 27, 2021, Compl., ¶ 31 (hereinafter, "the Fourth Assault"); (5) defendant Corrections Officer Menard "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on December 5, 2021, Compl., ¶ 37 (hereinafter, "the Fifth Assault"); (6) defendant Corrections Officer Bailey "grab[bing]" plaintiff by the back of his coat and twisting his waist shackles while exiting a bus on December 20, 2021, and Bailey and defendant Corrections Officer Trombley thereafter pushing plaintiff and squeezing his handcuffs during the escort back to his cell, in the presence of defendant Corrections Sergeant Cymbrak, Compl., ¶¶ 40-42 (hereinafter, "the Sixth Assault"); (7) defendant Corrections Officers Mitchell and Chase punching plaintiff in his cell and defendant Corrections Sergeant Marshall spraying plaintiff in the eyes with a foreign substance on January 30, 2022, while defendant Corrections Lieutenant Gettman, Corrections Officer Morrison, and Corrections Sergeant John Doe #2 stood by, Compl., ¶¶ 56-60 (hereinafter, "the Seventh Assault"); (8) defendant Corrections Officer John Doe #3 tightening plaintiff's handcuffs and slamming him into a wall, and defendant Osborn pushing plaintiff into a wall during an escort on April 30, 2022, Compl., ¶¶ 71-73 (hereinafter, "the Eighth Assault"); (9) defendant Osborn threatening plaintiff with harm, defendants Gettman, Corrections Sergeant Plonka, and Corrections Captain Gravlin disregarding the reported threat, defendants Osborn and Corrections Officer Robare thereafter macing and restraining plaintiff in his cell, and defendants Osborn and Corrections Officer Carter assaulting plaintiff in a different cell, in the presence of defendants Plonka and Corrections Officer John Doe #4, on December 12, 2022, Compl., ¶¶ 76-84 (hereinafter, "the Ninth Assault").

**\*6** The complaint also alleges that (1) defendant Osborn initiated the First Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 16, (2) defendant Corrections Officer Hooper, defendant Corrections Sergeant McGee, and defendant Phillips each authored false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, (3) defendant Menard initiated the Fifth Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 37, (4) defendant Trombley participated in the Sixth Assault in retaliation for plaintiff filing a lawsuit against him, Compl., ¶ 43, (5) defendants Bailey and Trombley

**Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

engaged in retaliatory acts of intimidation against plaintiff following the Sixth Assault, Compl., ¶¶ 46-50, (6) defendant Marshall directed "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, Compl., ¶¶ 53, 56, (7) defendant Chase engaged in acts of intimidation against plaintiff following the Seventh Assault, Compl., ¶¶ 62-69, (8) defendants Robare, Osborn, Plonka, Gravlin, and Gettman "conspired to conceal" the Ninth Assault "by falsely reporting the incident[,]" Compl., ¶ 81, and (9) defendants Upstate Correctional Facility Superintendent Uhler, Deputy Superintendent of Security Bishop, DOCCS Special Investigators Nichols and Holmes, and DOCCS Commissioner Annucci failed to protect plaintiff from assaults that occurred after July 1, 2021, by denying his grievances and failing to take "remedial action" against the involved officials. Compl., ¶¶ 23-26, 34-35, 38-39, 44-46, 51-52, 70-71, 74-75.

### 2. Assaults By Other Inmates

#### a. First Inmate Assault

On April 22, 2022, plaintiff returned to his cell from a program to find "several officers standing outside" and "Inmate J ... locked in the recreation cell." Compl., ¶ 96. "Inmate J immediately told plaintiff to tell the officers that plaintiff cannot stay in the cell, and threatened to beat-up plaintiff while calling [him] a 'rapo.' " *Id.*, ¶ 97. Defendant Corrections Sergeant McQuinn and defendant Corrections Officer Waite "disregarded Inmate J's repeated threats against plaintiff[,]" with McQuinn stating that "Bishop approved the double-bunk." *Id.*, ¶ 98. Defendants McQuinn and Waite then "exited the gallery before directing the recreation cell door to be open[ed] to allow Inmate J to enter the cell[.]" *Id.*, ¶ 99.

Upon entering the cell, Inmate J "immediately attacked plaintiff" and did so for a second time "when the officer arrived to serve lunch." Compl., ¶ 99. Plaintiff submitted a grievance regarding the incident, which was "forwarded" to defendants Uhler and Bishop for resolution. *Id.*, ¶ 100. The grievance was denied and plaintiff was thereafter placed in another double-bunk cell and "assaulted by other prisoners." *Id.*

#### b. Second Inmate Assault

On April 25, 2022, defendants Bishop and Corrections Sergeant Fletcher "recommended and directed" corrections officers to remove plaintiff from his cell "under the guise of a cell search" and place him in a cell with Inmate Tullis, "a known ... gang member and undercover homosexual" with "a history of violence against other prisoners in double-bunk cells." Compl., ¶ 102. Each day between April 26 and April 29, 2022, Inmate Tullis threatened to assault plaintiff and forced him to engage in sexual activity. *Id.*, ¶¶ 103-106. On April 29, 2022, defendants Osborn and Corrections Lieutenant Rowe "stood before the door" while plaintiff was sexually assaulted, and thereafter, defendant Osborn told plaintiff that the behavior did not "look good." *Id.*, ¶ 106.

On April 30 and May 1, 2022, Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶¶ 107-108. On May 2, 2022, plaintiff's grievance regarding the sexual assaults was "received by the Grievance Supervisors[,] who notified defendant [Corrections Captain] Veneske." Compl., ¶ 108. In response, defendant Veneske "directed" defendant Chase and Corrections Officer Welch (not a party) "to attack plaintiff at about 10:15 a.m." *Id.*

At 5:00 p.m., Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶ 109. One hour later, plaintiff "called a Prison Rape Crisis Hotline and reported the sexual assault," and defendant Veneske thereafter removed plaintiff from the cell. *Id.*, ¶¶ 110-111. Although plaintiff submitted grievances regarding the sexual assaults, which were reviewed by defendants Bishop and Veneske and "forwarded to" defendants Nichols and Holmes for investigation, he "continued to be placed in a double-bunk cell and assaulted by other prisoners." *Id.*, ¶¶ 111-112.

Bradshaw v. Ahitúcci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

### c. Third Inmate Assault

**\*7** On May 2, 2022, plaintiff filed a grievance regarding a "retaliatory search" carried out by defendant Corrections Sergeant Keleher on May 1, 2023. Compl., ¶ 113. On May 5, 2022, defendant Keleher directed two searches of plaintiff's cell and then recommended, and received approval from defendants Bishop and Corrections Lieutenant Debyah, for Inmate Samuel to be double-bunked with plaintiff. *Id.*, ¶ 114. Defendants Keleher, Debyah, Gravlin, and Bishop "denied plaintiff's request for protective custody." *Id.*, ¶ 115. Yet these officials "were aware that Inmate Samuel had a history of violence against other prisoners [and] was a Blood gang member," and plaintiff "has a history of being victimized by Bloods and labeled a snitch." *Id.*, ¶ 121.

Inmate Samuel was "forced by defendant Keleher into the cell and assaulted while handcuffed by defendant Osborn." Compl., ¶ 117. Inmate Samuel stated to these officials that he would not stay in the cell overnight and "immediately threatened to fight plaintiff[.]" *Id.* Shortly thereafter, Inmate Samuel "choked plaintiff from behind while sitting at the desk," causing plaintiff to "pass[ ] out[.]" *Id.*, ¶ 118. Inmate Samuel then "hog-tied plaintiff's hands behind his back and his legs, and dragged plaintiff to the recreation cell." *Id.*

Defendants Keleher and Corrections Officer Harmer subsequently entered the cell and "maliciously" stepped on plaintiff's legs and feet while he was handcuffed, in order to untie him. Compl., ¶ 119 (the "Tenth Assault"). Thereafter, defendants Keleher, Harmer, Osborn, and Gravlin "conspired to cover up the incident" by "falsely report[ing]" that "a cell fight" occurred, and omitting from the report any reference to defendants Keleher and Harmer entering the cell to untie plaintiff and stepping on him. *Id.*, ¶ 120. Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 122. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 123. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double-bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 122-123.

On May 13, 2022, "[a]s a means of retaliation for reporting sexual and physical assaults by other prisoners," defendant North "amended the Directive for double-cell housing assignments regarding victim prone inmates" to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion." *Id.*, ¶ 124.

### d. Fourth Inmate Assault

On June 8, 2022, defendants Gravlin and Rowe recommended plaintiff to be double-bunked with Inmate Johnson, which defendant Bishop approved. Compl., ¶ 125. Once they were in a cell together, Inmate Johnson threatened to attack plaintiff and harassed him about his criminal case and altercation with Inmate Samuel. *Id.*, ¶ 126. On July 17, 2022, Inmate Johnson was transferred out of Upstate Correctional Facility. *Id.*, ¶ 127. Apparently around this time, plaintiff filed a grievance requesting that he not be double-bunked, wherein he referenced the physical and sexual assaults he had experienced. *Id.*

Thereafter, defendant Osborn and Rowe recommended that plaintiff be placed in a double-bunk cell with Inmate X, which defendant Bishop approved, even though Inmate X "appeared to need emergency mental health care and had a history of violence[.]" Compl., ¶ 128. The same day that Inmate X was placed in a cell with plaintiff, he was removed. *Id.*

On August 1, 2022, plaintiff filed a grievance regarding officials placing rival gang members in double-bunk cells together, which "increases the violence among prisoners" at the facility. Compl., ¶ 129. On August 5, 2022, defendants Fletcher, Gravlin, and Bishop assigned plaintiff to be celled with Inmate Y, who "immediately" attacked plaintiff in the cell and was removed. *Id.*, ¶¶ 130-131. Defendants Fletcher, Gravlin, and Bishop "were aware that Inmate Y had a history of violence against prisoners,

2023 WL 4744735

was a Blood who could not remain in a double cell with plaintiff because he has a sex offense, and plaintiff has a history of being victimized by Bloods whom [sic] labeled him a snitch." *Id.*, ¶ 132.

**\*8** Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 133. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 134. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 133-134.

### e. Fifth Inmate Assault

On August 11, 2022, defendant Gravlin recommended that Inmate Jones be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Jones was a "known Blood" with a "history of violence against prisoners, and [weighed] about 220 pounds[.]" Compl., ¶ 133. Inmate Jones did not assault plaintiff, and was removed from the cell due to a pre-existing injury. *Id.*, ¶ 134. Defendants Gravlin and Bishop denied plaintiff's request for protective custody. *Id.*, ¶ 135.

On August 15, 2022, defendants Fletcher and Gravlin recommended that Inmate Burrell be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Burrell was a "known Blood" and was "involved in a cell fight immediately before being placed in the cell with plaintiff." Compl., ¶ 136. Inmate Burrell informed plaintiff that Fletcher and Gravlin wanted plaintiff out of the cell, and thereafter "attacked" him twice, including once in the presence of defendant Harrigan. *Id.*, ¶¶ 136-37.

Plaintiff submitted a grievance regarding this incident (and others), which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 141. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 142. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 141-142.

### f. Sixth Inmate Assault

In November, 2022, defendants Uhler, Bishop, and "Classification and Movement" Officers John Doe #1 and John Doe #2 "conspired to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell[.]" Compl., ¶ 145. On December 9, 2022, plaintiff was placed in a cell with Inmate Jones, who "punch[ed] plaintiff several times and choke[d] [him]." *Id.*, ¶ 146. Defendant Corrections Officer Orbegozo and defendant Corrections Sergeant John Doe #1 arrived at the scene "while plaintiff was being attacked[,]" but elected to leave plaintiff in the cell. *Id.*, ¶ 147.

On the morning of December 10, 2022, Inmate Jones attacked plaintiff again. Compl., ¶ 148. Plaintiff was thereafter removed from the cell, having suffered injuries to his lower back and spine. *Id.*, ¶¶ 148-149.

### g. Seventh Inmate Assault

On December 12, 2022, defendants Osborn, Plonka, Gettman, and Gravlin "directed plaintiff to exit his cell for a search" and then "moved [him] to a double cell as a means of retaliation and with the approval of defendant Bishop." Compl., ¶ 150. Plaintiff was placed in a cell with Inmate Flenders, "who had a history of violence against other prisoners." *Id.*, ¶ 151.

Inmate Flenders "threatened to attack plaintiff[,]" which was reported to defendants Osborn and Plonka, who ignored the information. Compl., ¶ 152. Thereafter, Inmate Flenders "punched plaintiff several times," which was again reported to

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

defendants Osborn and Plonka. *Id.*, ¶ 153. After a second assault on plaintiff by this inmate, defendant Osborn arrived at the cell and "repeatedly" sprayed plaintiff with mace. *Id.*, ¶ 154. Defendants Gravlin, Osborn, Carter, and Plonka then removed plaintiff from the cell and relocated him to a double-bunk cell with Inmate Williams, with the approval of defendant Bishop, even though this inmate also "had a history of violence against prisoners" and was "a known Blood gang member[.]" *Id.*, ¶ 155. Inmate Williams "attacked plaintiff" three times, causing him "serious injuries[.]" *Id.*, ¶ 156.

**\*9**  Plaintiff submitted a grievance regarding this incident and the Sixth Inmate Assault, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 158. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 159. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 158-159.

Defendants Nurse Sturgen and Nurse Lewis also "disregarded plaintiff's medical conditions" and failed to exempt him from further placement in a double-bunk cell. Compl., ¶ 160.

### h. Eighth Inmate Assault

On January 23, 2023, plaintiff was housed in a cell with Inmate Z, who informed the gallery officer (not a party) that he did not want to remain in the cell with plaintiff and intended to "fight" him. Compl., ¶ 162. The officer advised plaintiff that defendant Corrections Sergeant Sharpe would address the situation in the morning and had him remain in the cell. *Id.* At some point, plaintiff submitted letters to defendant Dumas, which indicated that he had been assaulted with a "makeshift weapon" by Inmate Z, who threatened to attack plaintiff again. *Id.*, ¶ 163. Defendant Dumas "disregarded the letters" and "continued [to] pass plaintiff" at his cell. *Id.* Plaintiff also informed defendant Sturgen about the threat during a cell visit, and this official stated that he did not stop by for that issue, and walked away. *Id.*

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 167. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 168. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 167-168.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 169.

### i. Ninth Inmate Assault

On March 6, 2023, defendants Gravlin, Corrections Officer Hollenbeck, and Corrections Sergeant DeCosse recommended plaintiff's placement in a double-bunk cell with Inmate Davis, which defendant Bishop approved even though Inmate Davis was "over 300 pound[s]" and "a known Blood with a[n] extensive history of violence against other prisoners[.]" Compl., ¶ 171. The next day, plaintiff informed a counselor about his cell placement and fear for his safety. *Id.*, ¶ 172. Five days later, Inmate Davis reached an agreement with defendant Hollenbeck to move him to a larger cell. *Id.*, ¶ 173. Roughly one hour after this agreement was reached, Inmate Davis "angerly [sic] asked [defendant Corrections] Officer Connor Gordon where is Hollenbeck and preceded [sic] to attack plaintiff by grabbing [him] by the sweater and swing[ing] and slamming [him] [in]to the door and ground[,] then cutting [him] twice on the left side of his face." *Id.*, ¶ 174. As a result of defendant Bishop's failure to "do a reassessment" following this incident, plaintiff was relocated to a cell with another gang member who was involved in a cell fight minutes before plaintiff arrived. *Id.*, ¶ 175.

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 69 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 178. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 180. Plaintiff's grievance was denied, and his complaint was dismissed, and he continues to be at risk of placement in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 178, 180.

**\*10** Following this incident, defendants DeCosse and Bishop denied plaintiff's request for protective custody. Compl., ¶ 179.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 182.

On April 14, 2023, defendants Gravlin, Bishop, and Corrections Sergeant Jubert "had plaintiff assigned to a cell with [a] prisoner [that] medical did not clear for 'TB' test[,]" and defendant Jubert informed plaintiff that he would be placed in a double-bunk cell "as soon as possible." Compl., ¶ 179.

Defendant DOCCS Commissioner Annucci "enacted or approved the double-celling policy that plaintiff has been subjected to" during his incarceration. Compl., ¶ 185.

### 3. Discipline

The complaint identifies the following incidents where plaintiff was issued a misbehavior report that was allegedly based on false charges and/or resulted in a disciplinary sanction of restrictive confinement.

#### a. First Disciplinary Sentence

On or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant Commissioner Hearing Officer S. Martin presided over plaintiff's combined disciplinary hearing ("the First Disciplinary Hearing") and found him guilty of all charges except interference in the first report and violent conduct in the second report. *Id.*, ¶ 190. As a result of improperly finding plaintiff guilty of two sex offenses even though plaintiff's conduct did not constitute a sex offense, defendant Martin sentenced plaintiff to 90 days confinement in the special housing unit ("SHU"). *Id.* Plaintiff appealed defendant Martin's disciplinary determination, which was affirmed by defendants Uhler and DOCCS Director of Special Housing Unit Rodriguez. *Id.*, ¶¶ 191-193. At the time the sanction was imposed, plaintiff was already serving a 360-day SHU sanction. *Id.*, ¶ 195. Plaintiff served the 90-day SHU sanction between December 3, 2022 and March 3, 2023. *Id.*, ¶ 198.

#### b. Second Disciplinary Sentence

On November 16, 2021, plaintiff "reported to medical staff and [a] sergeant that defendant Menard slammed his hand and kept it wedged in the hatch on the cell door." Compl., ¶ 199. Two days later, plaintiff was issued a misbehavior report that charged him with various rules violations based on his alleged refusal of a direct order to return a tray to defendant Menard on November 16, 2021. *Id.*, ¶ 200.

On December 1, 2021, defendant Institutional Steward Terriah presided over plaintiff's disciplinary hearing ("the Second Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 15 days of SHU confinement. Compl., ¶ 202. Plaintiff appealed the disciplinary determination on the grounds that "SHU could not be

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 70 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

imposed for the allege[d] offenses" in the misbehavior report. *Id.*, ¶ 203. Defendant Rodriguez failed to decide plaintiff's appeal within the 60-day deadline, which is "considered a constructive denial." *Id.*, ¶ 204. Plaintiff served the 15-day SHU sanction between March 3 and March 18, 2023. *Id.*, ¶ 209. Defendant Rodriguez then "extended" plaintiff's SHU sanction by another 30 days to April 12, 2023. *Id.*

### c. Third Disciplinary Sentence

 **\*11**  On November 21, 2021, plaintiff submitted a grievance regarding defendant Menard issuing him a false misbehavior report on November 18, 2021. Compl., ¶ 211. On December 5, 2021, defendant Menard issued plaintiff a false misbehavior report charging him with various rules violations related to refusing direct orders and creating a disturbance in his cell. *Id.*, ¶¶ 212-213.

On December 23, 2022, defendant Terriah presided over plaintiff's disciplinary hearing ("the Third Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 30 days of SHU confinement. Compl., ¶ 214. Plaintiff appealed the disciplinary determination on the grounds that the misbehavior report was "false and retaliatory" and "SHU confinement could not be imposed for the alleged offenses" in the misbehavior report. *Id.*, ¶ 215. On February 8, 2022, defendant Rodriguez modified the hearing decision by dismissing the interference charge, but failed to dismiss the improper SHU sanction. *Id.*, ¶ 216. Plaintiff is "expected to serve the 30 day SHU sanction from March 18, 2023 to April 17, 2023." *Id.*, ¶ 221.

### d. Fourth Disciplinary Sentence

On January 13, 2022, plaintiff filed a grievance regarding a "retaliatory cell search" and threat made to him by defendant Marshall in the presence of defendant Gettman. Compl., ¶ 223. On January 30, 2022, defendant Marshall issued plaintiff a misbehavior report, which charged him with assault on staff and other rules violations in connection with a use-of-force incident. *Id.*, ¶ 224.

At the conclusion of plaintiff's disciplinary hearing on February 17, 2022 ("the Fourth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 240 days of SHU confinement, and loss of package and commissary privileges. Compl., ¶ 226. On February 24, 2022, defendant Uhler reviewed and affirmed the disciplinary determination. *Id.*, ¶ 278. On April 21, 2022, defendant Rodriguez modified the SHU sanction to 180 days and otherwise affirmed the hearing decision. *Id.*, ¶ 229. Plaintiff is expected to either start or finish serving the 180-day SHU sanction on October 14, 2023. *Id.*, ¶ 233.

### e. Fifth Disciplinary Sentence

In "early April 2022," plaintiff filed a grievance and motion for injunctive relief in an ongoing federal lawsuit about his placement in a double-bunk cell. Compl., ¶ 235. On April 22, 2022, plaintiff was issued two misbehavior reports in connection with his altercation with Inmate J. *Id.*, ¶¶ 236-238.

At the conclusion of plaintiff's disciplinary hearing on April 26, 2022 ("the Fifth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the two misbehavior reports and imposed a penalty of 90 days of SHU confinement and loss of package and commissary privileges. Compl., ¶ 240. On April 29, 2022, defendant Uhler reviewed and affirmed the disciplinary determination even though SHU could not be imposed for the charged offenses pursuant to New York Correction Law § 137. *Id.*, ¶¶ 241-242. On July 12, 2022, defendant Rodriguez reviewed and affirmed the disciplinary determination. *Id.*, ¶ 243. Plaintiff is expected to serve the disciplinary sentence sometime between October, 2023 and January, 2024. *Id.*, ¶ 248.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 71 of 125
Bradshaw v. Ahnucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

### f. Sixth Disciplinary Sentence

On December 10, 2022, plaintiff was issued a misbehavior report for fighting with his cellmate. Compl., ¶ 249. At the conclusion of plaintiff's disciplinary hearing on December 23, 2022 ("the Sixth Disciplinary Hearing"), defendant Commissioner Hearing Officer LaPlant found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 30 days of SHU confinement and one month loss of good time credits. *Id.*, ¶ 251. On January 9, 2023, plaintiff appealed the disciplinary determination on the grounds that SHU could not be imposed for the charged violations, and the imposed penalties were retaliatory. *Id.*, ¶ 252. Defendant Rodriguez failed to decide plaintiff's appeal within 60 days in accordance with DOCCS' regulations "as a means to keep plaintiff confined in segregation." *Id.*, ¶ 253. Plaintiff is expected to serve this SHU sanction sometime between February and June, 2024. *Id.*, ¶¶ 259-260.

**\*12** Each of the imposed SHU sanctions were authorized and/or ignored by defendant Annucci. Compl., ¶ 260.

### 4. Confinement Conditions

In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff between May, 2021 and April 11, 2022: (1) a deprivation of nine out of twelve meals between May 28 and May 31, 2021, Compl., ¶ 262; (2) a deprivation of ten out of twelve meals between July 1 and July 4, 2021, and numerous additional meal deprivations between July 6, 2021 and April, 2022, Compl., ¶ 264; (3) inadequate heating due to the heat vent being turned off and cold air being blown in to plaintiff's housing unit, at the direction of defendant Gravlin, between September 25 and October 2, 2021, Compl., ¶ 267; (4) defendant Corrections Officer Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, Compl., ¶ 269; (5) defendant Corrections Sergeant Jane Doe "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]" Compl., ¶ 268; (6) the deprivation of a change of underwear and clothing between December 20, 2021 and January 23, 2022, Compl., ¶ 270; (7) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271; (8) searching plaintiff's cell and at times placing him in unclean cells without cleaning supplies at various points between May 25, 2021 and April 11, 2022, in response to him filing grievances, Compl., ¶¶ 272-290; (9) defendants Corrections Officers John Doe #5, Lamica, Locke, Keating, John Doe #6, and Ayer denying plaintiff access to legal mail on multiple dates between August and December, 2021, Compl., ¶¶ 291-295; (10) defendants Veneske and Gravlin denying plaintiff weekly phone calls on four separate occasions between July and December, 2021, Compl., ¶ 297; and (11) plaintiff's continuous confinement in the SHU between January 10, 2018 and April 12, 2022, Compl., ¶ 298.

Between April 12, 2022 and April 12, 2023, plaintiff was continuously confined in the RRU, where his confinement conditions were "identical to his confinement in the SHU, with the exception of approximately two hours of programming." Compl., ¶ 303. In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff during this time: (1) denial of "congregate religious services [and] recreation[,]" Compl., ¶ 303; (2) defendants Dumas, Gravell, and Mental Health Professionals Jane Doe #1 and Jane Doe #2 refusing to speak with plaintiff during rounds or place his name on callouts for private interviews between October 1, 2022 and April 12, 2023, Compl., ¶ 308; (3) defendant Jane Doe #2 disregarding plaintiff's request for an intake interview and stated concerns regarding depression and anxiety on April 3, 2023, Compl., ¶ 310; (4) defendant Jane Doe #1 failing to schedule plaintiff for a private mental health interview and, along with defendant Dumas, ignoring plaintiff's complaints regarding a lack of mental health care on April 12, 2023, Compl., ¶ 312; (5) defendants Gravlin, Veneske, Uhler, and Bishop denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023, Compl., ¶¶ 315-318; (6) defendants Fletcher and Keleher directing retaliatory searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, Compl., ¶¶ 319-326; (7) defendant Deputy Superintendent of Programs Stickney depriving plaintiff of a personalized rehabilitation plan and limiting his out-of-cell programming to two hours per day, Compl., ¶¶ 332-340; (8) defendants Stickney

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 72 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

and Bishop denying plaintiff weekly congregate services each week between April 12, 2022 and April 12, 2023, Compl., ¶¶ 341-342; (9) defendant Annucci denying plaintiff a nutritionally adequate diet "as a cost saving measure" since 2019, Compl., ¶¶ 343-347; (10) denial of tablet services, packages, congregate recreation, access to the law library, daily showers, full access to commissary services, and the opportunity to appear at grievance hearings throughout plaintiff's placement in the RRU, Compl., ¶¶ 348-356; (11) defendant Bishop forcing plaintiff to share a cell with another inmate in excess of sixty days, Compl., ¶¶ 357-359; (12) defendants Uhler and Bishop requiring plaintiff to wear handcuffs and shackles for all out-of-cell movement, and to remain shackled during programs, Compl., ¶¶ 361-367; and (13) defendants Uhler and Bishop denying plaintiff access to certain personal property throughout his placement in the RRU, Compl., ¶¶ 371-372.

### 5. Plaintiff's Claims

**\*13**  Liberally construed, the complaint asserts the following claims for relief against the named defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, North, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Uhler, Rowe, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Sturgen, Austin Martin, Lamica, Locke, and Keating; (2) First Amendment mail tampering claims against defendants Corrections Officer John Doe #5, Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) First Amendment free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer; (5) Eighth Amendment failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert; (6) Eighth Amendment conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Austin Martin, Marshall, Sturgen, and Veneske based on COVID-19 quarantine requirements, unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (7) an Eighth Amendment conditions-of-confinement claim against defendant Annucci based on plaintiff's receipt of an inadequate diet; (8) Eighth Amendment conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (9) Eighth Amendment conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (10) Eighth Amendment medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 based on denying plaintiff access to adequate medical and mental health treatment; (11) Fourteenth Amendment disciplinary due process claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, and LaPlant; (12) Fourteenth Amendment due process claims against defendants Gravlin and Veneske based on denying plaintiff access to phone calls; (13) Fourteenth Amendment due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of plaintiff's confinement in the RRU; and (14) conspiracy claims against defendants Tyler, Phillips, Hooper, McGee, Robare, Gravlin, Keleher, Harmer, and Osborn.

Plaintiff seeks an award of money damages and injunctive relief. Compl. at 45. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

### C. Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

Bradshaw v. Ahitécci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Hastings, Peterson, and Spinner

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, " 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

Here, plaintiff names Corrections Officers Hastings and Peterson and Steward Spinner as defendants without any allegations of wrongdoing by these individuals in the body of the complaint. Indeed, it is entirely unclear how and when, if at all, these officials may have violated plaintiff's federal rights. *See generally*, Compl.

Accordingly, plaintiff's Section 1983 claims against defendants Hastings, Peterson, and Spinner are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

 **\*14** Here, the Court liberally construes the complaint to assert retaliation claims against the following officials: (1) defendant Osborn based on this official initiating or participating in the First Assault, Fourth Assault, Eighth Assault, and Ninth Assault, and failing to protect plaintiff with respect to the second inmate assault, third inmate assault and seventh inmate assault, in response to plaintiff filing grievances against him, Compl., ¶¶ 16, 31, 71-73, 76-84, 101-106, 120, 150-155 ("First Retaliation Claim"); (2) defendants Lamica, Locke, and Keating denying plaintiff access to legal mail between August ad October, 2021, in response to plaintiff filing grievances against them, Compl., ¶¶ 292-294 ("Second Retaliation Claim"); (3) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271 ("Third Retaliation Claim"); (4) defendant Menard initiating the Fifth Assault in response to plaintiff filing a grievance against him, Compl., ¶ 37 ("Fourth Retaliation Claim"); (5) defendant Trombley participating in

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 74 of 125
Bradshaw v. Ahmucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

the Sixth Assault in response to plaintiff filing a lawsuit against him, Compl., ¶ 43 ("Fifth Retaliation Claim"); (6) defendants Bailey and Trombley engaging in retaliatory acts of intimidation against plaintiff following the Sixth Assault in response to plaintiff filing grievances against them, Compl., ¶¶ 40-52 ("Sixth Retaliation Claim"); (7) defendant Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, in response to plaintiff filing a grievance against him, Compl., ¶¶ 190-193, 269 ("Seventh Retaliation Claim"); (8) defendant Marshall directing "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, and participating in the Seventh Assault, in response to plaintiff filing grievances and a lawsuit against him, Compl., ¶¶ 27-29, 53-60, 222-224 ("Eighth Retaliation Claim"); (9) defendant Mitchell participating in the Seventh Assault in response to plaintiff filing a grievance against him for his role in a use-of-force incident on July 12, 2021, and/or for filing a grievance against him shortly before the Seventh Assault, Compl., ¶¶ 27-29, 222 ("Ninth Retaliation Claim"); (10) defendant Veneske directing defendants Welch and Chase to attack plaintiff on May 2, 2022, in response to plaintiff filing a grievance regarding sexual assaults committed against him earlier that day, Compl., ¶ 108 ("Tenth Retaliation Claim"); (11) defendant Keleher directing two searches of plaintiff's cell and recommending him for placement in a cell with Inmate Samuel on May 5, 2022, in response to plaintiff filing a grievance against this official days earlier, Compl., ¶¶ 113-114 ("Eleventh Retaliation Claim"); (12) defendant North "amend[ing] the Directive for double-cell housing assignments regarding victim prone inmates" on May 13, 2022, to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion[,]" in response to plaintiff "reporting sexual and physical assaults by other prisoners," Compl., ¶ 124 ("Twelfth Retaliation Claim"); (13) defendants Rowe and Osborn recommending, and defendant Bishop approving, plaintiff to be celled with Inmate X, in response to plaintiff filing a grievance regarding "double-bunking[,]" Compl., ¶¶ 128 ("Thirteenth Retaliation Claim"); (14) defendants Fletcher, Gravlin, and Bishop assigning plaintiff to be celled with Inmate Y on August 5, 2022, in response to plaintiff filing a grievance a few days earlier regarding officials placing rival gang members in double-bunk cells together, Compl., ¶¶ 129-131 ("Fourteenth Retaliation Claim"); (15) defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed regarding his placement in a double-bunk cell, Compl., ¶¶ 145-184 ("Fifteenth Retaliation Claim"); (16) defendants Osborn, Plonka, Gettman, and Gravlin "mov[ing] plaintiff to a double cell" with Inmate Flenders on December 12, 2022, and then relocating him to a cell with Inmate Williams based on his complaints about being housed with Inmate Flenders and earlier grievances that he filed, Compl., ¶¶ 150-156 ("Sixteenth Retaliation Claim"); and (17) defendants Fletcher and Keleher directing searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, in response to earlier grievances and/or lawsuits that plaintiff filed against these officials, Compl., ¶¶ 319-326 ("Seventeenth Retaliation Claim").

With respect to the Second Retaliation Claim against defendant Locke, the complaint lacks allegations which plausibly suggest that the single alleged incident of mail tampering resulted in any sort of material injury to plaintiff, or otherwise deterred him from pursuing his legal action. Thus, plaintiff has failed to adequately allege that defendant Locke's conduct rises to the level of adverse action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *Rasheen v. Adner*, 356 F. Supp. 3d 222, 243-44 (N.D.N.Y. 2019) (finding an isolated incident of mail tampering did not constitute an adverse action because plaintiff failed to allege facts plausibly suggesting that he suffered any injury as a result); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (collecting cases in which claims of mail tampering did not constitute an adverse action, noting in particular that the plaintiff had alleged only a single instance of mail interference); *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *7 (S.D.N.Y. Sept. 29, 2006) (finding that isolated incidents of tampering with plaintiff's family and legal mail was not an adverse action because it would not deter an ordinary individual from exercising his constitutional rights and plaintiff failed to allege he suffered any injury as a result of the tampering). Accordingly, plaintiff's Second Retaliation Claim against defendant Locke is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Third Retaliation Claim against defendant Sturgen, even assuming that plaintiff's election not to "take a COVID-19 test" satisfies the protected activity requirement, the complaint lacks allegations which plausibly suggest that placing plaintiff on quarantine status constitutes adverse action that was substantially motivated by a desire to punish plaintiff for engaging in protected activity, as opposed to a desire to impose facility-wide health precautions. Accordingly, plaintiff's Third

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 75 of 125
Bradshaw v. Ahirtucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

Retaliation Claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Seventh Retaliation Claim against defendant Austin Martin, although the complaint conclusorily alleges that this official removed plaintiff's mattress from his cell on December 6, 2021, "as a means of retaliation for filing a grievance against him[,]" the complaint does not identify any wrongdoing by this official prior to December 6, 2021, let alone indicate when plaintiff filed a grievance against this official. Thus, the Court has no basis to plausibly infer that the alleged wrongdoing on December 6, 2021, was substantially motivated by plaintiff's engagement in protected activity. Accordingly, plaintiff's Seventh Retaliation Claim against defendant Martin is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

 **15**  With respect to the Twelfth Retaliation Claim against defendant North, the complaint lacks allegations which plausibly suggest that (1) defendant North was employed at Upstate C.F.; or (2) the alleged Directive amendment impacted only inmates at this facility. In addition, the Court has no basis to plausibly infer from the allegations in the complaint that defendant North was aware of plaintiff's engagement in protected activity before allegedly amending the Directive regarding double-celling. Thus, the complaint fails to adequately allege that defendant North's conduct was substantially motivated by plaintiff's engagement in protected activity. *See, e.g.*, *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at *7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 208 (N.D.N.Y. 2015) (same); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 368 (N.D.N.Y. 2010) ("Plaintiff has failed to demonstrate a causal connection between his conduct and the adverse action of leaving the lights on in the SHU twenty-four hours a day since this policy applied to all inmates in the SHU, not just Plaintiff .... Therefore, Plaintiff cannot sustain a claim a retaliation since the adverse action was not directed at him, but rather the entire SHU population."). Accordingly, plaintiff's Twelfth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Fifteenth Retaliation Claim against defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 based on these officials allegedly "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed by plaintiff regarding his placement in a double-bunk cell, the complaint is devoid of allegations explaining how defendants John Doe #1 and John Doe #2 – both of whom are allegedly employed at the DOCCS Central Office in Albany, New York – may have known about lawsuits or grievances plaintiff filed related to double-celling. Furthermore, the complaint does not include any allegations explaining the basis for plaintiff's knowledge that these officials "conspired" with defendants Uhler and Bishop to return plaintiff back to Upstate C.F. Indeed, beyond plaintiff's speculation, the Court has no basis to plausibly infer that, but for plaintiff filing grievances and commencing litigation regarding double-celling, he would not have been transferred back to Upstate C.F. in or around November, 2022. Accordingly, plaintiff's Fifteenth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the remaining retaliation claims identified above, the Court finds that the complaint alleges enough to warrant a response. Accordingly, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that all retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Mail Tampering Claims

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further " 'one or more of the substantial governmental interests of security,

2023 WL 4744735

order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

**\*16** As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, ... an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

In this case, the complaint alleges that plaintiff was denied access to legal mail on the following dates by the following officials: (1) on August 6, 2021, by defendant John Doe #5; (2) on September 15, 16, 17 and October 6, 7, 8, 9, 15, 16, 17, 18, and 19, 2021, by defendant Lamica; (3) on September 22, 2021, by defendant Lord; (4) on October 7, 2021, by defendant Locke; (5) on October 8, 2021, by defendant John Doe #6; (6) on October 22 and 23, 2021, by defendant Keating; and (7) on November 5 and December 1, 2021, by defendant Ayer. Compl., ¶¶ 291-295.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's mail tampering claims against defendants Lamica, Lord, Locke, John Doe #6, Keating, and Ayer survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's mail tampering claim against defendant John Doe #5 because (1) this official's alleged refusal to provide plaintiff with access to legal mail was the first time plaintiff experienced this type of deprivation, and (2) a single incident of mail tampering – the first of its kind – does not plausibly suggest an ongoing practice of censorship unjustified by a substantial government interest.

Accordingly, plaintiff's mail tampering claim against defendant John Doe #5 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause of the First Amendment, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (articulating test that inmates

Bradshaw v. Ahmucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

"must show at the threshold that the disputed conduct ... burdens his sincerely held religious beliefs," prior to advancing to the *Turner* test and "legitimate penological interests that justify the impinging conduct"). "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 590 Fed. App'x 82 (2d Cir. 2015) (summary order).

**\*17** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Free Exercise claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). [6]

[6] In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

When a citizen is subjected to excessive force, "an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (internal quotation marks and citation omitted)).

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment excessive force and failure-to-intervene claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 78 of 125

Bradshaw v. Ahitacci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

### 6. Failure-to-Protect Claims

**\*18** "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836. In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Id.* Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.' " *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at \*4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact). "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at \*5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at \*17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at \*19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at \*8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016). "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Depat. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at \*7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough ....").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment failure-to-protect claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 7. Conditions-of-Confinement Claims

**\*19** The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth

2023 WL 4744735

Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303-04.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds the following conditions-of-confinement claims survive sua sponte review and require a response: (1) plaintiff's conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Martin, Marshall, Sturgen, and Veneske based on unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (2) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; and (3) plaintiff's conditions-of-confinement claims against defendants Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's conditions-of-confinement claims against (1) defendant Sturgen based on this official allegedly forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021, and (2) defendant Annucci based on this official allegedly providing plaintiff with an inadequate diet between 2019 and 2023.

With respect to defendant Sturgen, the Court has no basis to plausibly infer that forcing plaintiff to quarantine in his cell on two separate occasions for fourteen days deprived him of a basic human need. Furthermore, even assuming the quarantine hold subjected plaintiff to an objectively serious condition, the complaint is devoid of allegations which plausibly suggest that defendant Sturgen's decision was made out of deliberate indifference to plaintiff's health and safety (as opposed to out of a desire to reduce the potential spread of COVID-19). Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to plaintiff's claim against defendant Annucci based on the meal plan offered to plaintiff since 2019, the complaint generically alleges that plaintiff is on a "meatless" meal plan, which "lacks the necessary daily protien [sic], vitamins and minerals[,]" and "uses soy more than the daily 25 grams recommended by the Food and Drug Administration[.]" Compl., ¶¶ 344-345. The complaint further alleges that as a result of the meal plan, plaintiff "has suffered from low good cholesterol and vitamin D deficiency[.]" *Id.*, ¶ 346.

 **\*20**  As an initial matter, the complaint fails to explain how plaintiff knows that he suffers from "low good cholesterol and [a] vitamin D deficiency[,]" the severity of these alleged deficiencies, or when in relation to plaintiff's current diet he began suffering these deficiencies. Moreover, the complaint fails to allege facts which plausibly suggest that these deficiencies have impaired plaintiff's daily functioning, or present any long-term health problems, and the Court has no basis to plausibly infer from the allegations in the complaint that the food items offered to plaintiff are not available to the general public for consumption based on health and safety concerns. Thus, plaintiff has failed to adequately allege that his meal plan – which is presumably offered to other inmates as well – presents a known risk to his health. *See, e.g., Mejia v. Goord*, No. 9:03-CV-124 (LEK/DEP), 2005 WL 2179422, at \*6 (N.D.N.Y. Aug. 156, 2005) (noting that "the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions received"); *Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at \*4 (E.D.N.Y. July 25, 2012) ("Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu."); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 6:06-CV-6278, 2012 WL 6204205, at \*12 (W.D.N.Y. Dec. 12, 2012) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer).

Furthermore, the complaint does not allege that any medical professionals have expressed concerns for plaintiff's health based on his diet, or that plaintiff has sought treatment to address any health-related concerns stemming from his diet. In addition,

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 80 of 125
Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

the complaint fails to explain why plaintiff has only been offered a "meatless" meal plan since 2019 if he wishes to consume meat, or how the diet offered to plaintiff is a "cost saving measure[.]" Thus, the Court also has no basis to plausibly infer from the allegations in the complaint that defendant Annucci knew that plaintiff was (or has been) suffering from a nutritionally inadequate diet, yet has continued to deprive plaintiff of alternative meal options, i.e., has acted with deliberate indifference to plaintiff's dietary needs.

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Annucci based on the meal plan offered to plaintiff since 2019 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." *Id.*

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] ... whether the prisoner was actually deprived of adequate medical care[; and 2] ... whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry under the objective component requires examining "whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id.* at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component requires examining whether the purported inadequacy in the medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

**\*21** With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 9. Disciplinary Due Process Claims

Case 1:25-cv-00717-MAD-TWD     Document 14     Filed 10/21/25     Page 81 of 125

Bradshaw v. Ahmucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).

The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

Although the Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights, general guidelines have been defined. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey*, 197 F.3d at 589-90).[7] As a general matter, "[a] period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (citing *Sealey*, 197 F.3d at 589; *see also Palmer*, 364 F.3d at 64-65 ("Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required.") (citing *Colon*, 215 F.3d at 232).

[7]    A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon*, 215 F.3d at 230; N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).

**\*22** Under some circumstances, separate restrictive confinement sentences can be aggregated for purposes of determining whether there is a protected liberty interest. *See Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001). To determine whether such sentences should be aggregated for this purpose, "the precise issue ... is whether the disciplinary confinements in question constitute a 'sustained' period of confinement[.]" *Taylor v. Artus*, No. 05-CV-271, 2007 WL 4555932, at \*8 (N.D.N.Y. Dec. 19, 2007). Generally, "it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Id.* (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing, *inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

2023 WL 4744735

In this case, the complaint asserts due process claims based on the First Disciplinary Hearing, the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing. *See generally*, Compl.

### a. The First Disciplinary Hearing

According to the complaint, on or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant S. Martin presided over the First Disciplinary Hearing, found plaintiff guilty of all charges except interference in the first report and violent conduct in the second report, and sentenced plaintiff to 90 days confinement in the SHU. *Id.*, ¶¶ 190-194.

The complaint alleges that the charged misconduct, which included making sexually explicit statements to a corrections officer, did not constitute a sex offense, and defendant Martin's guilty determination was "not supported by 'some reliable evidence.' " Compl., ¶¶ 190-191. However, the complaint fails to include any details from which this Court might plausibly infer that the guilty determination was not supported by some reliable evidence. Indeed, the complaint is devoid of any allegations regarding the documentary evidence considered, and the witnesses who testified, during plaintiff's disciplinary hearing. Furthermore, plaintiff does not deny that he refused direct orders issued by a sergeant and made sexually explicit statements to the official as charged.

Simply put, even assuming that the disciplinary sanction triggered a liberty interest, the Court has no basis to plausibly infer that plaintiff was denied the process to which he was entitled during the First Disciplinary Hearing. Accordingly, plaintiff disciplinary due process claims related to the First Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Remaining Disciplinary Hearings

With respect to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing, the complaint does not include any allegations regarding these hearings, let alone allegations which plausibly suggest that plaintiff was denied the process to which he was entitled during any of them. Thus, plaintiff has failed to adequately allege that he suffered a violation of his due process rights in connection with any of the other disciplinary hearings referenced in the complaint.

**\*23** Accordingly, plaintiff's disciplinary due process claims related to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [8]

[8]     Insofar as the complaint alleges that the disciplinary sentences imposed with respect to each of the six disciplinary hearings was grossly disproportionate to the charged offenses, these allegations form the basis of plaintiff's Eighth Amendment claims for excessive restrictive confinement in the RRU.

### 10. Due Process Claims Based on Denial of Telephone Privileges

The complaint alleges that defendants Veneske and Gravlin denied plaintiff weekly phone calls on four separate occasions between July and December, 2021. *See* Compl., ¶ 297. At the time, plaintiff was confined in the SHU, and New York Correction

Bradshaw v. Ahlheid, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

Law § 137 was not in effect. [9] Furthermore, the law is well-settled that "[a] prisoner's access to family and friends via telephone may be restricted so long as the prisoner has some other avenue to communicate, even if less than ideal." *See Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2016 WL 11807252, at \*5 (N.D.N.Y. Dec. 19, 2016) (collecting cases).

[9]   This statute, which became effective on March 31, 2022, states, among other things, that "[w]ithin twenty-four hours of disciplinary confinement ... and at weekly intervals thereafter for the duration of such confinement, an incarcerated individual shall be permitted to make at least one personal phone call, except when to do so would create an unacceptable risk to the safety and security of incarcerated individuals or staff." *See* N.Y Corr. Law § 137(6)(g).

Here, plaintiff does not allege that he was altogether denied all forms of communication with the outside world at any point during his confinement in the SHU, let alone during the four weeks that he was allegedly denied his weekly phone calls. Thus, the Court does not construe the complaint to assert a cognizable Section 1983 claim based on the alleged phone deprivations. *See Fox*, 2016 WL 11807252, at \*5; *see also Martinez v. Healey*, No. 14-CV-302, 2014 WL 5090056, at \*3 (S.D.N.Y. Oct. 10, 2014) (noting that "inmates have no right to unlimited telephone calls" and that "phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel" (alteration and internal quotation marks omitted)); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at \*5 (S.D.N.Y. Mar. 8, 2012) ("Because inmates have no right to unlimited telephone calls, [the plaintiff] must, but fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights" (alterations, citation, and internal quotation marks omitted)); *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at \*2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), *report and recommendation adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

Accordingly, plaintiff's due process claims against defendants Gravlin and Veneske based on denying him access to phone calls are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. Due Process Claims Based on Conditions of RRU Confinement

**\*24** Aside from challenging the disciplinary determinations that resulted in his placement in the RRU, plaintiff challenges both the restrictive nature of his confinement in the RRU, and the extended duration of this confinement. More specifically, the complaint alleges that plaintiff (1) was limited to two hours of out-of-cell programming and subjected to other restrictions throughout his confinement in the RRU, which began on April 12, 2022, (2) was deprived of a rehabilitation plan throughout his confinement in the RRU, which prevented him from obtaining early release, and (3) is scheduled to remain in the RRU for more than one year, despite New York law prohibiting such a restrictive confinement period. Compl., ¶¶ 303-373. According to plaintiff, pursuant to New York Correction Law § 137, he has a liberty interest in accessing the programs, services, privileges, and rehabilitation plan that he was denied, among other things. *Id.*

"A liberty interest under the Fourteenth Amendment arises either directly from the Due Process Clause itself or from a state's laws." *Galloway v. Suffolk Cnty. Corr. Facility*, 232 F. Supp. 2d 4, 8 (E.D.N.Y. 2002) (citing *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995)). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified substantive predicates which limit the discretion of state officials; and (2) it must have employed explicitly mandatory language, requiring state officials to follow those substantive predicates." *Klos*, 48 F.3d at 87 (internal quotation marks and citations omitted).

Section 6 of New York Correction Law § 137, which became effective on March 31, 2022, provides, in pertinent part, as follows:

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 84 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

6. Except as provided in paragraphs (d) and (e) of this subdivision, the superintendent of a correctional facility may keep any incarcerated individual confined in a cell or room, apart from the accommodations provided for incarcerated individuals who are participating in programs of the facility, for such period as may be necessary for maintenance of order or discipline, but in any such case the following conditions shall be observed:

...

(j) (i) All segregated confinement and residential rehabilitation units shall create the least restrictive environment necessary for the safety of incarcerated persons, staff, and the security of the facility.

(ii) Persons in segregated confinement shall be offered out-of-cell programming at least four hours per day, including at least one hour for recreation. Persons admitted to residential rehabilitation units shall be offered at least six hours of daily out-of-cell congregate programming, services, treatment, recreation, activities and/or meals, with an additional minimum of one hour for recreation. Recreation in all residential rehabilitation units shall take place in a congregate setting, unless exceptional circumstances mean doing so would create a significant and unreasonable risk to the safety and security of other incarcerated persons, staff, or the facility. Persons in segregated confinement and residential rehabilitation units shall be offered programming led by program or therapeutic staff five days per week, except on recognized state legal holidays. All other out-of-cell time may include peerled programs, time in a day room or out-of-cell recreation area with other people, congregate meals, volunteer programs, or other congregate activities.

(iii) No limitation on services, treatment, or basic needs such as clothing, food and bedding shall be imposed as a form of punishment. If provision of any such services, treatment or basic needs to an individual would create a significant and unreasonable risk to the safety and security of incarcerated persons, staff, or the facility, such services, treatment or basic needs may be withheld until it reasonably appears that the risk has ended....

(iv) Upon admission to a residential rehabilitation unit, program and mental health staff shall administer assessments and develop an individual rehabilitation plan in consultation with the resident, based upon his or her medical, mental health, and programming needs. Such plan shall identify specific goals and programs, treatment, and services to be offered, with projected time frames for completion and discharge from the residential rehabilitation unit.

 **25** (v) An incarcerated person in a residential rehabilitation unit shall have access to programs and work assignments comparable to core programs and types of work assignments in general population. Such incarcerated persons shall also have access to additional out-of-cell, trauma-informed therapeutic programming aimed at promoting personal development, addressing underlying causes of problematic behavior resulting in placement in a residential rehabilitation unit, and helping prepare for discharge from the unit and to the community.

(vi) If the department establishes that a person committed an act defined in subparagraph (ii) of paragraph (k) of this subdivision while in segregated confinement or a residential rehabilitation unit and poses a significant and unreasonable risk to the safety and security of other incarcerated persons or staff, the department may restrict such person's participation in programming and out-of-cell activities as necessary for the safety of other incarcerated persons and staff. If such restrictions are imposed, the department must provide at least four hours out-of-cell time daily, including at least two hours of therapeutic programming and two hours of recreation, and must make reasonable efforts to reinstate access to programming as soon as possible. In no case may such restrictions extend beyond fifteen days unless the person commits a new act defined herein justifying restrictions on program access, or if the commissioner and, when appropriate, the commissioner of mental health personally reasonably determine that the person poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff. Any extension of program restrictions beyond fifteen days must be meaningfully reviewed and approved at least every fifteen days by the commissioner and, when appropriate, by the commissioner of mental health. Each review must consider the impact of therapeutic programming provided during the fifteen-day period on the person's risk of imminent harm and the commissioner must articulate in writing, with a copy provided to the incarcerated person, the specific reason why the person currently poses an extraordinary and unacceptable risk of imminent harm to the

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 85 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

safety or security of incarcerated persons or staff. In no case may restrictions imposed by the commissioner extend beyond ninety days unless the person commits a new act defined herein justifying restrictions on program access.

(m) (i) Any sanction imposed on an incarcerated person requiring segregated confinement shall run while the person is in a residential rehabilitation unit and the person shall be discharged from the unit before or at the time such sanction expires. If a person successfully completes his or her rehabilitation plan before the sanction expires, the person shall have a right to be discharged from the unit upon such completion.

(ii) If an incarcerated person has not been discharged from a residential rehabilitation unit within one year of initial admission to such a unit or is within sixty days of a fixed or tentatively approved date for release from a correctional facility, he or she shall have a right to be discharged from the unit unless he or she committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days and he or she poses a significant and unreasonable risk to the safety or security of incarcerated persons or staff. In any such case the decision not to discharge such person shall be immediately and automatically subjected to an independent review by the commissioner and the commissioner of mental health or their designees. A person may remain in a residential rehabilitation unit beyond the time limits provided in this section if both commissioners or both of their designees approve this decision. In extraordinary circumstances, a person who has not committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days, may remain in a residential rehabilitation unit beyond the time limits provided in this section if both the commissioner and the commissioner of mental health personally determine that such individual poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff.

*26 (iii) There shall be a meaningful periodic review of the status of each incarcerated person in a residential rehabilitation unit at least every sixty days to assess the person's progress and determine if the person should be discharged from the unit. Following such periodic review, if the person is not discharged from the unit, program and mental health staff shall specify in writing the reasons for the determination and the program, treatment, service, and/or corrective action required before discharge. The incarcerated person shall be given access to the programs, treatment and services specified, and shall have a right to be discharged from the residential rehabilitation unit upon the successful fulfillment of such requirements.

(iv) When an incarcerated person is discharged from a residential rehabilitation unit, any remaining time to serve on any underlying disciplinary sanction shall be dismissed. If an incarcerated person substantially completes his or her rehabilitation plan, he or she shall have any associated loss of good time restored upon discharge from the unit

In light of the foregoing statutory language, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci related to restrictions imposed with respect to his RRU confinement survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 12. Conspiracy Claims

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). A plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

Case 1:25-cv-00717-MAD-TWD   Document 14   Filed 10/21/25   Page 86 of 125
Bradshaw v. Ahiticci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

The complaint asserts conspiracy claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, Gravlin, Hooper, and McGee. Compl. at 44-45.

As an initial matter, the complaint is devoid of any details regarding an agreement entered into between two or more of the named defendants to violate plaintiff's constitutional rights. For example, the complaint lacks any allegations which plausibly suggest that any of the named defendants involved in the alleged use-of-force incidents or housing plaintiff with an inmate who assaulted him, agreed, in advance, to subject plaintiff to physical harm. In any event, plaintiff's excessive force and failure-to-intervene claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, and Gravlin have survived sua sponte review, and plaintiff need not establish that these officials agreed in advance to violate his constitutional rights in order to succeed on these claims. *See Clark v. City of Oswego*, No. 5:03-CV-202 (NAM/DEP), 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) ("A plaintiff asserting a Section 1983 conspiracy claim must first prove a violation of the underlying constitutional right, ..., or in other words, a civil conspiracy claim do[es] not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established[.]" (internal quotation marks and citations omitted)); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), as amended (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("A Section 1983 conspiracy claim against private individuals will stand 'only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.'") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Furthermore, insofar as plaintiff asserts conspiracy claims against defendants Hooper and McGee based on allegations that these officials prepared false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, the alleged creation of false reports by officials who were not present during the alleged use-of-force incident is not enough to plausibly suggest participation in an agreement to violate plaintiff's constitutional rights. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report); *Lewis v. Havernack*, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *11 (N.D.N.Y. Mar. 28, 2013) ("Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report."), *report and recommendation adopted by* 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013).

**\*27**  Accordingly, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) (1) for failure to state a claim upon which relief may be granted.

## IV. PRELIMINARY INJUNCTION MOTION

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31,

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 87 of 125

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiff's request for injunctive relief seeks an order enjoining defendants Annucci, Uhler, Bishop, and Dumas from (1) assigning officials "involved in assaulting plaintiff from assuming a post or supervising an area where plaintiff is located," (2) "assigning plaintiff to double-bunk cells or having [him] remain in a double-cell [for] more than 60 days unless he volunteer[s]," (3) "continuing plaintiff's confinement in the RRU[,]" and (4) "denying [him] medical care[.]" *See* Preliminary Injunction Motion at 1.

After plaintiff filed his motion, he notified the Court in another one of his pending actions that he has been transferred to Great Meadow Correctional Facility. *See Bradshaw v. Annucci*, Dkt. No. 150.

In light of plaintiff's transfer, and the absence of any credible evidence that he is likely to continue suffering, at his new facility, the same alleged harm that forms the basis of his Preliminary Injunction motion, his request for injunctive relief is denied as moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

## V. CONCLUSION

*28  **WHEREFORE**, it is hereby

**ORDERED** that plaintiff's application for leave to proceed IFP (Dkt. No. 2) is **GRANTED** in accordance with 28 U.S.C. § 1915(g) because plaintiff has made a preliminary showing that he is entitled to the "imminent danger" exception; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk is directed to update the docket to add any officials identified herein as defendants who are not currently recognized as such; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review: (1) plaintiff's retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, and Keating (i.e., each of plaintiff's retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation Claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim); (2) plaintiff's mail tampering claims against defendants Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) plaintiff's free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci based on the denial of congregate services and religious meals; (4) plaintiff's excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer (i.e., the excessive force and failure-to-intervene claims related to each of the ten assaults identified in the recitation of facts); (5) plaintiff's failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert (i.e., the failure-to-protect claims related to each of the nine inmate assaults identified in the recitation of facts); (6) plaintiff's conditions-of-confinement claim against defendant Gravlin based on inadequate heating in plaintiff's housing unit between September 25 and October 2, 2021; (7) plaintiff's conditions-of-

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 88 of 125
**Bradshaw v. Ahitücci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

confinement claim against defendants Austin Martin and Marshall based on defendant Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021; (8) plaintiff's conditions-of-confinement claim against defendant Corrections Sergeant Jane Doe based on this official "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]"; (9) plaintiff's conditions-of-confinement claim against defendants Gravlin, Veneske, Uhler, and Bishop based on these officials denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023; (10) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (11) plaintiff's conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (12) plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1, and Jane Doe #2; and (13) plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of his confinement in the RRU; and it is further

**\*29**  **ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; [10] and it is further

[10]  Should plaintiff seek to pursue any of the claims dismissed without prejudice, including any claim dismissed against a terminated defendant, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

**ORDERED** that the Preliminary Injunction Motion (Dkt. No. 4) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Clerk shall **TERMINATE** the following individuals as defendants in this action: Hastings, Peterson, Spinner, Hooper, McGee, and John Doe #5; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell. [11]  The Clerk shall forward a copy of the summons and complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

[11]  Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

**ORDERED** that a response to the complaint be filed by defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 89 of 125

Bradshaw v. Ahitucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

**ORDERED** that plaintiff must take reasonable steps to ascertain the identity of the remaining "Doe" defendants and, when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); and it is further

**\*30 ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4744735

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 90 of 125
Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)

2007 WL 607341

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail; Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).

|

Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

*DECISION and ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New* York, No. 97 CIV. 2246(MGC), 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at *1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

2007 WL 607341

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order. [1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis.* Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

2007 WL 607341

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

2020 WL 409744
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rodney JOSEPH, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

18-cv-7197 (NSR)
|
Signed 01/23/2020

**Attorneys and Law Firms**

Rodney Joseph, Napanoch, NY, pro se.

Rebecca Lynn Johannesen, NYS Office of the Attorney General, New York, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** *Pro se* Plaintiff, Rodney Joseph ("Plaintiff"), formerly incarcerated at Sullivan Correctional facility, brings this action under 42 U.S.C. § 1983, asserting claims of deliberate indifference to his medical needs, forcible touching, assault, retaliation, denial of due process, and impeding religious practice. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff sues 44 medical staff members, kitchen staff members, correctional officers, and correctional officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including Anthony Annucci, William Keyser, Edward Burnett, Gail Williams, Angelo Justiniano, Corey Proscia, Joseph Maxwell, Lane Kortright, Swany Reid, Frank Decker, Samuel Encarnacion, Stainislaus Ogbonna, Jefrysson Aldana, Scott Christie, Colleen Bennett, Tanya Pomeroy, Wladyslaw Sidorowicz, Janice Wolf, S.T. Herman, Epifanio Tolentio, Kevin Miller, Wayne Jordan, William Beach, Renee Askew, Michael Wood, Van Fuller, Gina Maliga, Heather Wyatt, William Elberth, Kellyanne Giminiani, Christopher Conway, Blain Reddish, Mark Puerschner, David Jurgens, Edward Bonnell, Shaun Braisington, Joseph Franke, Matthew DeFrank, Chester Stungis, Robert Depaolo, and Adam Jarosz (the "Represented Defendants"). [1] (*Id.*)

[1]     Defendants Ginger Eggler, "Ginsin," and Alan Hanson have not been served. (*See* ECF Nos. 10, 11, and 15; Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF No. 80 ("Defs.' Mot.") at 8, n.1.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Represented Defendants have moved to dismiss the Complaint. (*See* ECF No. 79.) Plaintiff has not responded to the motion; thus, per a memorandum endorsement dated August 5, 2019, the Court deemed the motion fully submitted. (*See* ECF No. 81.) For the following reasons, the Represented Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

**I. Factual Allegations**

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 94 of 125
Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

### a. Plaintiff's Medical Condition and Treatment

Plaintiff asserts that in or about 2008, after suffering a heart attack, he was placed on diabetic medications by a Sullivan Correctional Facility ("Sullivan") doctor. (Compl. at 18.) Sometime in 2016, however, he was taken off the diabetic medications by the medical staff at Sullivan. (*Id.*) Shortly after being taken off the diabetic medications, Plaintiff began to suffer pain in his arms, difficulty breathing, and an increased heart rate. (*Id.*) He complained to the Medical Department on a sick call visit, but only received 30 days off from work. (*Id.*) Plaintiff asserts that the pain got worse and he kept going to sick call but nothing was done to alleviate his pain. (*Id.*) In or about June 2017, after going to emergency sick call with "unbearable pain," Plaintiff suffered another heart attack and was rushed to a hospital where he underwent quadruple-bypass heart surgery. (*Id.*) Plaintiff asserts the following: the medical staff taking him off the diabetic medications led to his heart attack; he is presently in severe pain but is not receiving all of the recommended medications prescribed by a specialist; and he is possibly suffering the symptoms of another imminent heart attack or stroke. (*Id.* at 18–19.)

### b. January 11, 2018 Incident

**\*2**  Plaintiff also asserts forcible touching and assault claims against Defendant Correctional Officer Wyatt ("Wyatt") stemming from an incident that occurred on or about January 11, 2018. (*Id.* at 19.) Plaintiff alleges that, on January 10, 2018, he filed a grievance against Wyatt. (*Id.*) He alleges that after he filed the grievance, when he delivered feed-up bags for other inmates, Wyatt ordered him on the wall for a pat frisk although he had previously been pat frisked when he left the kitchen. (*Id.*) Plaintiff claims that while he was on the wall, Wyatt "started squeezing and poking in the areas where [he] had [his] quadruple-by-pass surgery, chest, arms, legs, and private parts." (*Id.* at 20.) Plaintiff alleges that Wyatt's actions caused him chest pains and led to a one-week hospital stay at Albany Medical Center because most of his arteries were blocked. (*Id.*)

### c. Officers' Retaliation

Plaintiff asserts that Wyatt acted in retaliation for Plaintiff's filing of the grievance against her. (*Id.*) Plaintiff also claims that he was subjected to retaliation by other correction officers for the filing of grievances. (*Id.*) He claims the following retaliatory actions: he was issued a fabricated misbehavior report and his job assignment was taken away on or about June 20, 2018, despite an "excellent work evaluation"; DOCCS staff would not allow him to notify his family when he was admitted to an outside hospital, or allow him to call his family; his cell was unreasonably searched five out of seven days; he was denied access to medication; and his religious callout was cancelled without a security reason. (*Id.* at 21–22.)

### d. Incident with Correctional Officer Elberth

Finally, Plaintiff alleges that while conducting a pat frisk, Correctional Officer Elberth ("Elberth") told him to reach back with his left hand and take off his right boot. (*Id.* at 22.) When Plaintiff told Elberth that he was unable to stretch out like that because of his medical issues, Elberth grabbed his left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall, causing him pain. (*Id.*) Plaintiff claims that Elberth then did the same thing to his right leg, despite Plaintiff informing Elberth that he was in pain. (*Id.*) After the incident, Plaintiff went to emergency medical and had to be rushed to the hospital for a "minor heart attack." (*Id.*) Plaintiff claims that the attack was caused by Elberth's actions, and now every time he sees Elberth, the officer threatens him. (*Id.*) Plaintiff asserts that Elberth also sends unspecified threatening messages to him through other correction officers. (*Id.*)

### LEGAL STANDARD

### I. Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

**\*3** *Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

### II. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction in a federal court bears the burden of proving that jurisdiction by the preponderance of the evidence. *Id.* The court must take all facts in the complaint as true and draw all inferences in favor of the party asserting jurisdiction. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2000). As with Rule 12(b)(6), when dealing with Rule 12(b)(1), the Court construes the allegations in a *pro se* plaintiff's complaint in the light most favorable to the *pro se* plaintiff. *Makarova*, 201 F.3d at 113.

### III. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### DISCUSSION

### I. Defendants Who Are Only Named in the Caption

As an initial matter, Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are only named in the caption and the complaint contains no allegations that they violated the law or otherwise caused injury to the Plaintiff.

Plaintiff fails to assert personal involvement on the part of these 40 defendants in this matter. In order to hold a defendant responsible for a constitutional deprivation, Plaintiff must demonstrate, *inter alia*, the defendant's personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692–95 (1978). Supervisory officials may be personally involved within the meaning of § 1983 only if he or she participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). "A Plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

**\*4** Here, Plaintiff fails to allege facts of any personal involvement by the 40 aforementioned defendants. They are named in the caption only. The body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner. For this reason, the claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are dismissed without prejudice for lack of personal involvement.

## II. Eighth Amendment Medical Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm ... need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

Defendant does not allege that any Defendant was involved in his medical care or treatment—his Complaint mentions that "DOCCS Staff" took him off the diabetic medications, and that he made complaints to the "Medical Department" at sick call. (*See* Compl. at 18.) While chest pain resulting from clogged arteries and heart attacks surely constitute serious medical conditions,[2] Plaintiff has failed to allege any Defendant's involvement in, let alone any Defendant's deliberate indifference to, Plaintiff's medical care. Therefore, Plaintiff's Eighth Amendment claim is dismissed without prejudice.

[2]     "[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard." *Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at \*5 (S.D.N.Y. Mar. 29, 2016) (quoting *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)); *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" has been found to constitute a sufficiently serious injury).

It is possible that Plaintiff intended to bring claims against certain named defendants from the caption, whom he has identified as serving in medical roles at Sullivan: Ginger Eggler (Nurse Administrator 1); Colleen Bennett (Nurse Administrator 2); Wladyslaw Sidorowicz (Facility Doctor); and Janice Wolf a/k/a Janice Wolf-Friedman (Facility Doctor). To the extent that Plaintiff can provide more factual allegations relating to these four defendants with respect to Plaintiff's alleged medical indifference claim, Plaintiff is granted leave to replead that claim.

### III. Retaliation Under the First Amendment

**\*5** Plaintiff's claims against several prison officials regarding alleged retaliatory action sound in the First Amendment. To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation ... Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' " *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

> virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.... Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

#### a. January 11, 2018 Incident and Cell Searches

Plaintiff alleges that Defendant Wyatt retaliated against him because he filed a grievance against Wyatt on January 10, 2018, when Plaintiff discussed the grievance with Defendant Sergeant Fuller. (Compl. at 19.) Plaintiff alleges that this retaliation took the form of a pat frisk on January 11, 2018, in which Wyatt "squeez[ed]" and "pok[ed]" his chest, arms, legs, and "private parts." (*Id.* at 20.) Plaintiff further alleges that Area Sergeant Defendant Hanson told him that "if [he] did not sign off on this grievance, [he] was going to have a whole lot of problems." (*Id.* at 20.) Additionally, Plaintiff alleges that his cell was searched in an "unreasonable manner" five out of seven days. (*Id.* at 21.)

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 98 of 125

Joseph V. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

On these issues, Plaintiff has failed to state a claim for relief because "cell searches and pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." *Amaker v. Fischer*, No. 10-CV-0977A SR, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, No. 10-CV-0977, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015). This is "because inmates have no reasonable expectation of privacy in their prison cells" and therefore "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005); *see also Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("Cell searches and pat frisks are an ordinary part of prison life and ... do not deter the average inmate from continuing to exercise ... First Amendment rights"). Furthermore, the Complaint does not link the cell searches to any particular defendant. (*See* Compl. at 21.) Accordingly, even if retaliatory in nature, Plaintiff's claims against Defendants Wyatt, Hanson, and any other defendants regarding these incidents must be dismissed with prejudice. [3]

[3]     To the extent that Plaintiff's allegation suggest that Defendant Wyatt used excessive force, these allegations also fail to state a claim upon which relief can be granted. The actions alleged by Plaintiff do not rise to the level of a constitutional violation. *See Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at *7 (S.D.N.Y. Dec. 18, 2003) (rejecting Eighth Amendment claim where defendant's action in pressing plaintiff's face into a wall while conducting a pat frisk was "consistent with a good faith attempt to maintain prison discipline and order" and lacked "malicious" intent).

To the extent that Plaintiff alleges that Defendant Wyatt committed offenses under the New York State Penal Law, this claim must be dismissed because the law does not provide a private right of action to enforce rights allegedly created by this provision. *See Casey Sys., Inc. v. Firecom, Inc.*, No. 94 CIV. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995) ("As a general rule, when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction.").

### b. Loss of Job Assignment

**\*6** Plaintiff further alleges that his job assignment was taken away from him due to a "fabricated misbehavior report" as retaliation for Plaintiff's filing of harassment grievances. (Compl. at 21.) Plaintiff notes that despite his "excellent work evaluation," the proffered basis for his termination was that Plaintiff "do[es] not get along with other inmates and staff." (*Id.*) This claim similarly fails on the pleadings.

Defendants are correct that inmates do not have any constitutional, statutory, or regulatory right to any prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.' "). Furthermore, the thin allegations contained in the complaint are "wholly conclusory with no plausible nexus between the grievance and the misbehavior report." *White v. Bergenstock*, No. 08 Civ. 717, 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009). Plaintiff's Complaint does not contain any allegations as to the nature of the misbehavior report that led to the loss of his job, who wrote the misbehavior report, nor does it connect the writer of that misbehavior report to the grievances in any way. *See Bouknight v. Shaw*, No. 08 CIV 5187(PKC), 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding plaintiff's allegation that officer "wrote [him] up for revenge" was conclusory and insufficient to state a plausible retaliation claim).

Consequently, these claims are dismissed without prejudice. To the extent that Plaintiff can provide more factual allegations relating to the author of the misbehavior report and a connection between Plaintiff's grievance, the misbehavior report, and loss of Plaintiff's job, Plaintiff is granted leave to replead his claim.

### IV. First Amendment Freedom of Speech

Plaintiff additionally asserts that "DOCCS staff" did not allow him to notify his family about his treatment at an outside hospital, and that he was not allowed to call them. (Compl. at 21.) This amounts to a First Amendment freedom of speech claim, which is a cognizable claim under § 1983. *See Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection."). First Amendment rights "may not be infringed without good cause," and "there must be a showing of a substantial governmental interest serving the

legitimate and reasonable needs and exigencies of the institutional environment ... to warrant such limitations upon an individual inmate's rights to communicate." *Id.* (internal citations omitted). But, as courts considering prison telephone restrictions have agreed, "an inmate has no right to unlimited telephone use." *Pitsley v. Ricks*, No. 96-CV-0372NAMDRH, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000) (citing support from First, Sixth, Seventh, Eighth, Fifth, and Ninth Courts of Appeals). The same holds true with regard to mailing non-legal letters. *See Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972) ("[A] prisoner's right to mail letters to his family or friends is not absolute.").

In any case, allegations of infringement of rights must have some specificity. Again, Plaintiff has failed to allege that any Defendant in this action was involved in this denial. For the reasons outlined above, because a defendant's personal involvement is a necessary element of a 1983 claim, *see McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), this claim must be dismissed without prejudice.

## V. First Amendment Free Exercise

 **\*7**  Plaintiff's next claim pertains to the exercise of his religious beliefs, which he claims were infringed by an "intentional" cancellation of his religious "call-out." (Compl. at 22.) Plaintiff alleges that "there is no security reason for this." (*Id.*)

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore ... religious beliefs in accordance with the dictates of their conscience.' " *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Second Circuit has acknowledged, however, that "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted).

To establish a free exercise claim, courts in this Circuit have generally required inmate plaintiffs to plead that the disputed conduct substantially burdened a sincerely held religious belief. *See Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). Defendants "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[.]" *Salahuddin*, 467 F.3d at 275.

In the present action, Plaintiff has again failed to allege that any Defendant was involved in the cancellation of his religious call out. Plaintiff does not specify how often or why his callout was canceled. Without more, Plaintiff cannot plausibly allege that his sincerely held religious beliefs were "substantially burdened." *See Williams v. Weaver*, No. 9:03CV0912(LEK/GHL), 2006 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (denial of access to two weekly religious services does not constitute substantial burden); *c.f. George v. Cty. of Westchester*, NY, No. 13 CV 4511 VB, 2014 WL 1508612, at *4 (S.D.N.Y. Apr. 10, 2014) (finding substantial burden plausibly alleged where plaintiff was denied congregate religious services "repeatedly" over two periods totaling approximately ten months). Accordingly, this claim is also dismissed without prejudice.

## VI. Eighth Amendment Excessive Force

Next, Plaintiff's description of the incident with Correctional Officer Elberth may be read to present an Eighth Amendment excessive force claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both "an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or failed to act, with a 'sufficiently culpable state of mind.' " *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

2020 WL 409744

**\*8** The objective prong, requiring the alleged conduct to be " 'sufficiently serious' to reach constitutional dimensions," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), is a context-specific standard that focuses on the harm done given "contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The Supreme Court has explained that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. Therefore, "the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] *per se* ... whether or not significant injury is evident." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Lebron v. Mrzyglod*, No. 14-CV-10290(KMK), 2019 WL 3239850, at \*14 (S.D.N.Y. July 18, 2019).

### a. Excessive Force Analysis

Here, during the course of a pat frisk, Plaintiff alleges that Elberth instructed him to reach back with his left hand and take off his right boot. (Compl. at 22.) Plaintiff did not comply, and instead told Elberth that "he could not reach back like that because he had a Qua[dru]ple By Pass and was unable to stretch back like that." (*Id.*) In response, Elberth grabbed Plaintiff's left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall. (*Id.*) Plaintiff further specifies that Elberth retorted, "How does that feel?", to which Plaintiff responded that he was in pain. (*Id.*) Elberth then repeated the action using Plaintiff's right leg. (*Id.*) Subsequently, Plaintiff suffered a "minor heart attack." (*Id.*)

Defendants argue that the amount of force described by Plaintiff was commensurate with the need to conduct a pat frisk and does not rise to the level of a constitutional violation. The Court recognizes that "a pat frisk, involving some physical contact, is a standard procedure inside a prison." *Beckles v. Bennett*, No. 05 CIV. 2000 (JSR), 2008 WL 821827, at \*20 (S.D.N.Y. Mar. 26, 2008). As such, allegations of aggressive pat frisks have generally not been found to be "sufficiently serious" to present viable excessive force claims. *See Tavares v. City of New York*, No. 08 CIV. 3782 PAE JCF, 2011 WL 5877550, at \*6 (S.D.N.Y. Oct. 17, 2011), *report and recommendation adopted*, No. 08 CIV. 3782 PAE, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011) (finding "actions taken consistent with a forceful pat frisk—the most serious contact alleged by the plaintiff—are not sufficiently 'repugnant to the conscience of mankind,' to give rise to an Eighth Amendment claim."); *Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at \*6 (S.D.N.Y. Dec. 18, 2003) (pressing inmate's face into the wall while conducting pat frisk was "commensurate with the need to conduct a pat frisk"); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (finding level of force applied in "aggressive pat frisks" does not rise to a constitutional violation); *see also Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (no excessive force found where, while handcuffing plaintiff, officer pulled plaintiff's hands behind his back and pushed him against a bar).

While the level of force alleged here by Plaintiff may not, on its own, rise to the level of a constitutional violation, Plaintiff has alleged extenuating circumstances that distinguish his case from those involving run-of-the-mill pat frisks. Plaintiff alleges that he informed Elberth of his medical condition and heart surgery, which prevented him from moving his body as Elberth had instructed. Plaintiff further alleges that he did suffer physical pain as a result of Elberth's actions—and informed Elberth of this—but that Elberth disregarded Plaintiff's condition and continued to forcefully move Plaintiff's legs. Plaintiff has thus averred sufficient facts to plausibly claim that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6; *see also Santiago v. Westchester Cty.*, No. 13–CV–1886, 2014 WL 2048201, at \*5 (S.D.N.Y. May 19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted his arm, [and] picked him up off the ground while squeezing his throat ... lead to a plausible inference that the force inflicted was malicious and wanton").

**\*9** This conclusion is reached by construing the allegations in the Complaint in a light most favorable to Plaintiff, and bearing in mind Plaintiff's status as a *pro se* litigant. Evidence uncovered during discovery may ultimately prove that the force employed by Defendant Elberth was done in a good faith effort to maintain or restore discipline, but such a determination is best resolved on a motion for summary judgment or at trial. *See Olutosin v. Lee*, No. 14-CV-685 (NSR), 2016 WL 2899275, at \*9 (S.D.N.Y. May 16, 2016); *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) ("[T]he fact intensive inquiry of whether a particular

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 101 of 125
Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

use of force was reasonable is best left for a jury to decide.") (collecting cases). As such, Defendants' motion to dismiss is denied as to Plaintiff's excessive force claims against Defendant Elberth.

### b. Qualified Immunity Defense

Defendants argue that Defendant Elberth should be entitled to the defense of qualified immunity. The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) whether the right was defined with "reasonable specificity"; (2) whether the Supreme Court and the applicable circuit court support the existence of the right; and (3) whether under existing law a reasonable defendant would have understood that the conduct was unlawful. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013). "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity).

It is well-settled that freedom from the use of excessive force is a clearly established constitutional right. *See, e.g., Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007). As discussed above, the Complaint sufficiently alleges a violation of Plaintiff's clearly established constitutional right to be free from excessive force under the Eighth Amendment. Further, "nothing at this stage of the proceedings suggests that [the defendant] reasonably believed his actions to be lawful at the time of the challenged act." *Santiago*, 2014 WL 2048201, at *5. Consequently, the Court does not find the application of qualified immunity to be warranted at this juncture.

## VII. Defendant Fuller

The only other Defendant named in the Complaint, Defendant Fuller, is also not alleged to have been personally involved in any constitutional violation. Plaintiff's only allegation against Defendant Fuller is that Plaintiff and Defendant Fuller engaged in a discussion about Plaintiff's intent to file a grievance against Defendant Wyatt. (Compl. at 19.) These allegations fail to show Defendant Fuller's personal involvement in any constitutional violation, and for the same reasons as previously stated, he is therefore dismissed from this action without prejudice.

## CONCLUSION

**\*10** For the foregoing reasons, Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part. The motion is denied as to Plaintiff's excessive force claims against Defendant Elberth. The motion is granted as follows:

The following of Plaintiff's claims are dismissed *with prejudice*:

- Plaintiff's First Amendment retaliation claims against Defendants Wyatt, Hanson, and any other defendants regarding the January 11, 2018 incident and cell searches.

The following of Plaintiff's claims are dismissed *without prejudice*:

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

- Plaintiff's Eighth Amendment medical indifference claims against Eggler, Bennett, Sidorowicz, and Wolf;

- Plaintiff's First Amendment retaliation claim regarding the loss of his job assignment;

- Plaintiff's First Amendment freedom of speech claim;

- Plaintiff's First Amendment free exercise claim; and

- All remaining claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, and Fuller.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Represented Defendants' Motion to Dismiss at ECF No. 79.

Plaintiff shall have thirty-five days from the date of this Opinion, on or before February 27, 2020, to amend the Complaint as to those claims that are dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

If Plaintiff does not file an amended complaint within thirty-five days, and he cannot show good cause to excuse such a failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice, and the Complaint (ECF No. 2) will serve as the operative complaint in this action to which remaining Defendants should respond. The remaining Defendant Elberth is directed to file an answer to the Complaint on or before March 19, 2020. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before April 9, 2020.

The Clerk of the Court is respectfully directed to terminate Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, Fuller, Wyatt, and Hanson. The Clerk of the Court is directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

**\*11** SO ORDERED.

Attachment

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____
(Include case number if one has been
assigned)

## AMENDED
## COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**

2020 WL 409744

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                    Middle Initial            Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

_____

County, City                            State                Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**

2020 WL 409744

## IV.  DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 2:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 3:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Defendant 4:

| First Name | Last Name | Shield # |
|---|---|---|

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |
|---|---|---|

Page 3

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 106 of 125

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were
harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach
additional pages as necessary.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Page 4

Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 107 of 125

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.   RELIEF

State briefly what money damages or other relief you want the court to order.

Page 5

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**
Case 1:25-cv-00717-MAD-TWD    Document 14    Filed 10/21/25    Page 108 of 125
2020 WL 409744

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

2020 WL 409744

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                          Rev. Jan. 2012
------------------------------------------------------------x

               Plaintiff(s),    **CIVIL CASE DISCOVERY PLAN**
    - against -         **AND SCHEDULING ORDER**

               Defendant(s).    \_\_\_\_\_ CV _____ (NSR)

------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than _____.

7.    Non-expert depositions shall be completed by _____.

    a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.    Depositions shall proceed concurrently.

    c.    Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later than _____.

2020 WL 409744

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge

**All Citations**

Not Reported in Fed. Supp., 2020 WL 409744

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Sylvia JENKINS, Plaintiff,

v.

Mr. LIADKA, Syracuse Police Officer; Mr. Sands, Syracuse Police Officer;

John Doe, Syracuse Police Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).

|

Sept. 13, 2012.

Attorneys and Law Firms

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for City of Syracuse, Catherine Ena Carnrike, Esq., Assistant Corporation Counsel, of Counsel, Syracuse, NY, for Defendants.

### MEMORANDUM–DECISION and ORDER

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka, Mr. Sands, John Doe, and Syracuse Police Department ("Defendants"), is Defendants' motion to dismiss Plaintiff's Complaint for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality, Plaintiff's Complaint asserts three claims against Defendants arising from an investigatory stop in September 2010, in Syracuse, New York: (1) a claim that three Syracuse Police Officers unreasonably searched her in violation of the Fourth Amendment; (2) a claim that they unlawfully seized, and failed to return, her personal property in violation of the Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim that they subjected her to excessive force in violation of the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as follows: (1) on the evening of September 9, 2010, she was stopped on Butternut Street in the City of Syracuse by two officers, who questioned her regarding a call they had received; (2) when she told the two police officers that she did not know what they were talking about and "attempted to go on about [her] business," the officers became "uptight, rude, [and] abnormal in their conversations [and] behavior," and threatened her; (3) the officers then proceeded to conduct a search of "all [of Plaintiff and her] personal property," and, in the process of doing so, twisted her arm and forced her onto the front of their police vehicle; (4) a third police officer arrived, and she was assaulted by all three officers (hereinafter "Defendants"), who hit her on the back and threw her onto the police vehicle; (5) following the deprivation on September 9, 2010, Defendants denied her a post-deprivation remedy through a combination of threats, intimidation and/

2012 WL 4052286

or nonresponsiveness; and (6) Defendants took these actions against her intentionally because they did not personally like her, given her previous interactions with the Syracuse Police Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident, she suffered various injuries and losses, including (1) a "tremendous setback in already trying to recover in an [sic] grave overall manner of my life [and] lifestyle involving officials internally [and] externally," (2) head and back pain, and mental suffering, (3) loss of personal property, and, (4) loss of employment. (*Id.*) As relief, Plaintiff requests an award of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting Plaintiff's three claims is assumed in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 1.)

### B. Defendants' Motion

**\*2**  On May 6, 2011, Defendants filed a motion to dismiss. (Dkt. No. 13, Attach 2.) Generally, in support of their motion, Defendants assert the following two arguments: (1) because the Complaint was not served within the time allowed by Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice for this Court, the Court lacks jurisdiction over Defendants in accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are following her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3**  Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may make a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45– 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice"

2012 WL 4052286

standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1]    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a) (2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]    *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]    *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

 **\*5**  Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not

incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at *5.


### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).


### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)


### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).


#### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*"[4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ."[5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."[6]

[4]     *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

[5]     *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval

2012 WL 4052286

through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

6      *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

7      *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

8      *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that

2012 WL 4052286

his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

[9]     *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10]    *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

[11]    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

[12]    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

2012 WL 4052286

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

#### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8** After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth Amendments; and (3) a claim of excessive force under the Fourth Amendment.

#### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at \*29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

13    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

14    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at \*24 [S.D.N.Y. March 30, 2012] ). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department, [15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries.

*Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

15    In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10**  For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241. Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

2012 WL 4052286

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16] More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17] More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate

2012 WL 4052286

clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

### C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order to amend her complaint at all on four occasions. [21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile. [22]

2012 WL 4052286

18    *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

19    *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

20    *Id.*

21    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

22    *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone— twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

23    *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

2012 WL 4052286

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24] *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25] *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26] *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is ***GRANTED*** **in part** and ***DENIED*** **in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally ***DISMISSED;*** and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

End of Document                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.